**1320**

John POTTS, individually, as Administrator of the Estate of Brandon Potts, deceased, and as Father and Natural Guardian of Jeffery Potts and Kimberly Potts, minors, and Karen Potts, individually, Appellees,

v.

Joe BENJAMIN and Ferrell Benjamin, individually and d/b/a Fleet Service, Appellants,

and

Ramiro Murillo Inturralde.

No. 88–1834.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1989.
Decided Aug. 21, 1989.

C. Tab Turner, Little Rock, Ark., for appellants.

R. David Lewis, Little Rock, Ark., for appellees.

Before LAY, Chief Judge, and ARNOLD and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

On Thanksgiving Eve 1985, Karen Potts and her three young children Brandon, Jeffery, and Kimberly were passengers in a station wagon driven by Mrs. Potts' sister Vickie Williams; Mrs. Williams, her children, and the Pottses were en route to the sisters' parents' home for the holiday. As they neared the intersection of Interstates 30 and 630 in Little Rock, heavy congestion brought traffic to a standstill. While they were waiting for the traffic to begin moving again, a tractor truck driven by Ramiro Murillo Inturralde, onto which two other tractor trucks had been decked or "piggybacked" earlier that day in Memphis by Joe and Ferrell Benjamin (doing business as Fleet Service), collided with the cars stopped on the roadway, setting off a chain reaction of collisions among a number of cars including Mrs. Williams' station wagon. Ultimately the station wagon was also struck by Inturralde's vehicle. In the collision Mrs. Potts, Jeffery, and Kimberly were injured. The force of the collision hurled Brandon, age two, onto the roadway, where he was run over by Inturralde's vehicle. Brandon died a few minutes later in his mother's arms.

John Potts (individually, as administrator of Brandon's estate, and as father of Jeffery and Kimberly) and Karen Potts (hereafter referred to collectively as "plaintiffs") brought suit against the Benjamins, individually and as Fleet Service, and Inturralde in the District Court[1] pursuant to 28 U.S.C. § 1332. The case was tried in July 1987 and ended in a hung jury. The case

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

was retried the following May, the jury returning verdicts in favor of plaintiffs on the wrongful death claim and on their individual claims, and awarding punitive damages against each defendant. The District Court entered judgment on the jury verdicts and denied the Benjamins' motion for a new trial. The Benjamins (hereafter referred to as "defendants") appeal from this judgment,[2] alleging a number of grounds for reversal and a new trial. We find no reversible error and accordingly affirm the final judgment of the District Court.

## I.

Defendants challenge two rulings in which the District Court excluded from evidence testimony they claim was critical to their defense of the lawsuit. We treat these claims of error individually.

## A.

Defendants first claim that the District Court committed reversible error in excluding from evidence testimony that Mrs. Potts was not wearing a seat belt at the time of the collision. According to defendants, an injured party's failure to wear an available seat belt may constitute comparative negligence or, alternatively, failure to mitigate damages in a collision case.[3] Defendants have not cited to us, nor have we been able to find, an Arkansas Supreme Court case squarely addressing this issue; our task, therefore, is to determine what the Arkansas Supreme Court probably would hold were it called upon to decide the question, see Hazen v. Pasley, 768 F.2d 226, 228 (8th Cir.1985), keeping in mind that the District Court's interpretation of Arkansas law is entitled to substantial deference. See Dabney v. Montgomery Ward & Co., 761 F.2d 494, 499 (8th Cir.), cert. denied, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985).

We first consider whether Mrs. Potts' failure to wear an available seat belt may constitute comparative negligence under Arkansas law. We begin by noting, as did the District Court, that at the time of the collision neither the State of Arkansas nor the City of Little Rock had enacted a law requiring the use of seat belts. While in some jurisdictions the absence of such a law appears to be a significant consideration in resolving the issue, see, e.g., Schmitzer v. Misener–Bennett Ford, Inc., 135 Mich.App. 350, 354 N.W.2d 336 (1984); Taplin v. Clark, 6 Kan.App.2d 66, 626 P.2d 1198 (1981), we find some suggestion, in the only Arkansas case touching upon the question, that failure to wear an available seat belt may, in the absence of a statute requiring use, nevertheless constitute negligence under the general common-law standard of ordinary care. See Harlan v. Curbo, 250 Ark. 610, 466 S.W.2d 459, 460–61 (1971). Under the Arkansas comparative negligence statute, "'fault' ... includes ... any ... omission ... which is a proximate cause of any damages sustained by any party." Ark.Code Ann. § 16–64–122(c) (1987); see Kubik v. Igleheart, 280 Ark. 310, 657 S.W.2d 545, 546 (1983). Therefore, assuming that Mrs. Potts' nonuse of her seat belt constituted a failure to exercise ordinary care, such nonuse is not "fault" for purposes of comparative negligence unless it proximately caused Mrs. Potts damage. Under Arkansas law, "proximate cause" is "a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." AMI 501, Arkansas Model Jury Instructions (Civil) (3d ed. 1989); see also Collier v. Citizens Coach Co., 231 Ark. 489, 330 S.W.2d 74, 76 (1959). Thus, the nonuse of a seat belt may constitute a proximate cause of injury if some or all of the damage sustained by the nonuser

---

**2.** Inturralde is not a party to this appeal.

**3.** As defendants put it, "The district court's exclusion of seat belt evidence prohibited the jury from being presented with all evidence necessary to make an informed determination concerning Mrs. Potts' comparative negligence. In

addition to being admissible on the issue of Mrs. Potts' negligence, it should have been allowed for consideration when determining the extent of Mrs. Potts' damages." Appellants' Brief at 11–12.

would not have occurred had the seat belt been worn.

We believe it likely, then, that the Arkansas Supreme Court would hold that a jury may assess a percentage of fault against Mrs. Potts if defendants can demonstrate the degree to which her injuries would have been reduced by use of a seat belt. *Cf. Shelter Mutual Insurance Co. v. Tucker,* 295 Ark. 260, 748 S.W.2d 136, 137–38 (1988) (plaintiff's nonuse of seat belt may become an issue submissible to jury to extent nonuse can be "connect[ed] ... with the injuries she sustained"). *Accord Franklin v. Gibson,* 138 Cal.App.3d 340, 188 Cal.Rptr. 23, 25 (1982); *Quinn v. Millard,* 358 So.2d 1378, 1384–85 (Fla.Dist.Ct. App.1978); *Lowe v. Estate Motors Ltd.,* 428 Mich. 439, 410 N.W.2d 706, 716 (1987); *Dunn v. Durso,* 219 N.J.Super. 383, 530 A.2d 387, 397 (1986); *Woods v. City of Columbus,* 23 Ohio App.3d 163, 492 N.E.2d 466, 470–71 (1985); *Dahl v. Bayerische Motoren Werke,* 304 Or. 558, 748 P.2d 77, 84 (1987); *Grobe v. Valley Garbage Service, Inc.,* 87 Wash.2d 217, 551 P.2d 748, 756 (1976); *Bentzler v. Braun,* 34 Wis.2d 362, 149 N.W.2d 626, 640 (1967). Defendants, however, offered to prove at trial only that there was a seat belt available for Mrs. Potts' use and that at the time of the collision she was not wearing it; defendants proffered no evidence upon which the jury, if allowed to hear it, could have distinguished those injuries caused by defendants' own negligence from those caused by Mrs. Potts' failure to buckle up. If defendants had such evidence, it was incumbent upon them to place it into the trial record by offer of proof once the District Court made the evidentiary ruling now complained of. *See* Fed.R.Evid. 103(a)(2). In the absence of such evidence, we have no basis in the record from which to conclude that the ruling affected a substantial right of defendants. *See, e.g., Johnson v. Hill,* 274 F.2d 110, 115 (8th Cir.1960); *Haw-*

*kins v. Missouri Pacific Railroad Co.,* 188 F.2d 348, 350 (8th Cir.1951); *cf. Harris v. Smith,* 372 F.2d 806, 815 (8th Cir.1967). There is, therefore, no warrant for reversal on this claim of error. *See* Fed.R.Civ.P. 61.

■ We also reject defendants' alternative argument that the District Court should have admitted the fact of Mrs. Potts' nonuse of her seat belt for the purpose of proving her failure to mitigate damages.[4] Under Arkansas law, the burden of proving that a plaintiff in a negligence case could have avoided some or all of his or her damages rests with the defendant, including the burden of proving the amount of damage that the plaintiff could have avoided. *See Bill C. Harris Construction Co. v. Powers,* 262 Ark. 96, 554 S.W.2d 332, 336 (1977). Thus, as we similarly concluded in our discussion of defendants' comparative negligence argument, defendants cannot, under the Arkansas doctrine of avoidable consequences, avail themselves of the fact that Mrs. Potts did not wear her seat belt unless they can show that some portion of her harm flowed from that nonuse. *See also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on The Law of Torts § 65, at 458–59 (5th ed. 1984) (doctrine of avoidable consequences essentially a rule permitting apportionment or division of damages). Defendants' avoidable consequences argument, then, fails for the same reason their comparative negligence argument must—defendants did not make an offer of proof as to the harm Mrs. Potts could have avoided to herself by fastening her seat belt. The only evidence in the trial record is the simple fact of nonuse, and this fact alone is not sufficient under Arkansas law to warrant the submission of the issue to the jury. We therefore have no basis upon which to conclude that the District Court's ruling affected a substantial right of defendants, and accordingly reject defendants' avoidable consequences argument.

---

4. We accept for the sake of argument defendants' suggestion that "a plaintiff's duty to mitigate damages is equivalent to the doctrine of avoidable consequences" under Arkansas law, *see* Appellant's Brief at 11, and further grant defendants, without deciding, that the Arkansas

Supreme Court would apply the doctrine of avoidable consequences to a plaintiff's pre-collision (as distinguished from post-collision) conduct, although defendants have not cited, nor have we been able to find, any case so holding.

For the reasons expressed above, we find no reversible error in the District Court's exclusion of evidence that Mrs. Potts was not wearing an available seat belt at the time of the collision.

### B.

The second evidentiary ruling defendants challenge concerns issues of Arkansas law closely related to the first. Defendants claim that the District Court committed reversible error in excluding from evidence testimony that Mrs. Potts had not placed her children in child restraint seats prior to the collision. The District Court based its ruling on an Arkansas law which states: "The failure to provide or use a child passenger safety seat shall not be considered, under any circumstances, as evidence of comparative or contributory negligence, nor shall [such] failure be admissible as evidence in the trial of any civil action with regard to negligence." Ark.Code Ann. § 27–34–106(a) (1987). Defendants challenge the District Court's ruling on two grounds. First, defendants argue that § 27–34–106(a) is a procedural rule and thus does not apply in a diversity action in federal district court. Second, defendants argue that even if § 27–34–106(a) applies in this case it does not bar evidence of Mrs. Potts' failure to place her children in child restraint seats because this evidence was offered to prove failure to mitigate damages.

■ As a preliminary observation, we perceive some tension between defendants' view that the use of evidence of Mrs. Potts' failure to wear an available seat belt is governed by state substantive law (a position defendants at least implicitly take in their appeal to the Arkansas doctrines of comparative negligence and avoidable consequences, *see* Part I–A above) and their view that the use of evidence of Mrs. Potts' failure to place her children in child restraint seats is not governed by state sub-

stantive law. And although it is true that in a diversity case in federal court state law governs substantive issues and the Federal Rules of Evidence govern the admissibility of evidence, *see Adams v. Fuqua Industries, Inc.,* 820 F.2d 271, 273 (8th Cir.1987), we think it rather plain that § 27–34–106(a) establishes a rule of substantive law. It is part of the Child Passenger Protection Act, Ark.Code Ann. §§ 27–34–101 to –107, a law which places a legal duty upon specified persons to use child safety seats, provides for fines where that duty is breached, and which, in the section quoted above, removes as a defense in a negligence case any breach of the duty created. A statute modifying the content of state tort law doctrines of contributory and comparative negligence seems to us to be a classic example of the type of substantive rule of law binding upon a federal court in a diversity case. *Cf. Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (duty of care owed by defendant to injured plaintiff in negligence action is governed by state law). We therefore reject defendants' contention that the use to be made of the fact of Mrs. Potts' non-provision of child safety seats is governed solely by the rules of relevancy of the Federal Rules of Evidence.[5]

■ Nor do we believe that § 27–34–106(a) may be skirted by claiming that the defense interposed is the "failure to mitigate damages" rather than contributory negligence. As we discussed in Part I–A of this opinion, it is likely the Arkansas Supreme Court would hold that, in the context of the failure to use an available seat belt, these defenses may be invoked where the defendant can demonstrate that some portion of plaintiff's damages would not have occurred had plaintiff exercised ordinary care, that is, had plaintiff fastened the seat belt. Section 27–34–106(a) embodies a policy choice on the part of the Arkansas

---

**5.** Defendants stress that § 27–34–106(a) speaks in terms of evidence and admissibility of evidence, but we do not think that this feature of the statute renders it non-substantive. The parol evidence rule, for example, is usually viewed as a rule of substantive law despite the fact that

it deals with the admissibility of evidence in a contract case. Indeed, this view of the parol evidence rule has been adopted by the Arkansas courts. *See, e.g., Arkansas Rock & Gravel Co. v. Chris–T–Emulsion Co.,* 259 Ark. 807, 536 S.W.2d 724, 727 (1976).

legislature not to permit such an apportionment of damages in the context of the failure to use child safety seats. The District Court afforded that policy proper scope by refusing to permit a defense which, however denominated, would have undermined it.

We find, then, no reversible error in the District Court's ruling regarding Mrs. Potts' failure to use child passenger safety seats.

## II.

■ Defendants claim the District Court erred in refusing to allow their expert witness to testify about the mechanical aspects of the braking system on Inturralde's vehicle. The District Court allowed defendants' expert to testify on a number of topics, but defendants here allege that there was some additional opinion he would have rendered that was essential to their defense. We have no basis upon which to conclude that the District Court's ruling affected a substantial right of defendants, see Fed.R.Civ.P. 61, because they made no offer of proof at trial, nor is it contextually apparent, what their expert's testimony would have been regarding the mechanical aspects of the braking system had he been permitted to testify on the subject. See Fed.R.Evid. 103(a)(2). We need say no more to dispose of this issue.

## III.

■ Defendants contend that the District Court committed reversible error in submitting plaintiffs' strict liability claim to the jury. They argue that under Arkansas law strict liability does not apply to the trucks they sold Inturralde and, alternatively, that even if it does apply the evidence does not show the existence of an unreasonably dangerous defect at the time of sale.

Plaintiffs sought to prove at trial that defendants, in the process of assembling three trucks into a single decked unit, disabled the unit's braking system. The District Court submitted the case on interrogatories, and the jury found defendants guilty of negligence and found that they had sold Inturralde a "defective vehicle assembly." Designated Record at 57, 58. Defendants admit in their brief and at oral argument that plaintiffs produced sufficient evidence at trial to warrant submission of their case to the jury on a negligence theory. Therefore, even if it was error to submit the case on a strict liability theory—an issue that we do not decide— that error was harmless since the jury separately found for plaintiffs on their alternative, unobjectionable theory of recovery. Cf. Mueller v. Hubbard Milling Co., 573 F.2d 1029, 1038–39 (8th Cir.), cert. denied, 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 174 (1978). Further, there is no reason to believe that the jury's damage award was in any way tainted by the strict liability submission, assuming arguendo it was erroneous, since the jury was entitled to render compensatory and punitive damages against defendants on plaintiffs' negligence theory alone.[6] See AMI 2201, 2217; cf. Robertson Oil Co. v. Phillips Petroleum Co., 871 F.2d 1368, 1375–76 (8th Cir. 1989); Dudley v. Dittmer, 795 F.2d 669, 673–74 (8th Cir.1986). Accordingly, we reject this claim of error without occasion to consider whether under Arkansas law strict liability attaches to the sale of the product involved in this case.

## IV.

■ Defendants argue that the District Court abused its discretion in refusing to modify the jury's award of $300,000 to each parent and $200,000 to each of the two surviving siblings for mental anguish caused by the death of Brandon or, alternatively, to grant them a new trial.[7]

---

6. Whether plaintiffs' evidence is sufficient to support the punitive damage award is an issue we take up separately in Part V of this opinion.

7. We question whether defendants have properly preserved their claim for remittitur. Although they made passing reference to remit-

titur in their motion for a new trial, defendants did not brief it in their suggestions in support of that motion; their argument, rather, was that the excessiveness of the compensatory damage award entitled them to a new trial. The District Court did not address remittitur, presumably

We find little of substance in this claim. We first consider whether plaintiffs adduced sufficient evidence at trial to warrant submission of their claims for mental anguish to the jury. We believe that they did. Under Arkansas law, a plaintiff must demonstrate "some evidence of the suffering of more than normal grief, other than [the plaintiff's] subjective statements" in order to recover damages for mental anguish in a wrongful death case, *St. Louis Southwestern Railway Co. v. Pennington*, 261 Ark. 650, 553 S.W.2d 436, 449 (1977), and "the amount of money required to compensate for 'more than normal grief' lies largely within the province of the jury." *Id.* At trial, two psychologists who provided the Potts family with therapy testified (by deposition) in detail as to the ways in which each member of the family manifested greater than normal grief over Brandon's death.[8] The jury apparently accepted this testimony, as was its prerogative. Defendants seize upon a statement by one of the psychologists that Mr. Potts' grief was "average," Trial Transcript at 237; we are satisfied, however, upon review of the psychologists' testimony taken as a whole that there was sufficient evidence from which the jury could conclude that Mr. Potts' grief was greater than normal.[9] This testimony was amplified by Mr. Potts' own testimony regarding the severity of his grief, which the jury was entitled to credit.

■ We next consider whether the District Court should have granted defendants a new trial based on the claimed excessiveness of the jury's award. The District Court's refusal to grant defendants a new trial on this ground is a ruling we will not disturb unless the District Court can be said to have abused its discretion, *see Pitts v. Electro-Static Finishing, Inc.*, 607 F.2d 799, 803 (8th Cir.1979), and to conclude that the District Court abused its discretion we would have to find that the jury's award is so excessive as to constitute plain injustice, or a monstrous or shocking result. *See Dabney*, 761 F.2d 494 at 501. We perceive no such abuse of discretion here, given the evidence of the gruesomeness of Brandon's death and of the serious effect of his death upon the surviving members of the family.

## V.

■ Finally, defendants contend that the District Court erred in submitting the question of punitive damages to the jury because plaintiffs' evidence, in their view, is legally insufficient to support any award of punitive damages.

The District Court instructed the jury:

In order to recover punitive damages from the Benjamins ... plaintiffs have the burden of proving that the Benjamins ... knew or ought to have known, in the light of surrounding circumstances, that their conduct would naturally and probably result in injury or damage and that they continued such conduct in reckless disregard to consequences from which malice may be inferred.

Trial Transcript at 420. Defendants do not claim that the District Court misstated Arkansas law, but rather invite us to compare the facts of this case with the facts of *National By-Products, Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 731

---

because the court believed that defendants had not asked for it. We believe the remittitur issue was not adequately presented below, and therefore do not address it here.

**8.** Contrary to defendants' suggestion, *see* Appellants' Brief at 38, Kimberly and Jeffery were not required under Arkansas law to testify about their grief in order to be entitled to damages. *See St. Louis Southwestern Railway*, 553 S.W.2d at 449. Defendants also contend in their brief that Kimberly and Jeffery, ages three and five at the time of the accident, were too young to comprehend the death of their brother and therefore should be barred from recovery, but this seems to us to be a question of fact which the jury was free to, and evidently did, resolve against defendants based on the testimony of the psychologists and perhaps on its collective common experience. Defendants cite and we know of no Arkansas case holding that as a matter of law children under the age of six cannot recover damages for mental anguish.

**9.** *See, e.g.,* Trial Transcript at 229 (problems affecting one member of family have detrimental effect on entire family unit); 238 (grief suffered by members of Potts family more than normal); 246 ("[I]t's even in a lot of ways more difficult for him [Mr. Potts], because he wasn't there."); 282 (psychological harm to family members "significant and serious").

S.W.2d 194 (1987), a case in which the Arkansas Supreme Court reversed on sufficiency-of-evidence grounds an award of punitive damages in a collision case. We accept defendants' invitation and find the comparison unavailing.

In *National By–Products,* which involved a collision between a tractor-trailer rig driven by an employee of the defendant company and several other vehicles, the evidence showed that the defendant company had a policy of adjusting the brakes on its trailers once per month and of conducting an internal inspection of the brakes on its tractors every fifty thousand miles. 731 S.W.2d at 196. By contrast, in the case at bar plaintiffs presented evidence from which the jury could find that defendants never inspected the brakes on any of the trucks they sold and that they did not care whether the brakes on the two "piggy-backed" trucks they sold Inturralde were operative or inoperative.[10] There was also evidence from which the jury could find that defendants knowingly rendered the brakes on the two "piggy-backed" trucks inoperative. The jury was entitled to find that in these circumstances defendants knew or ought to have known that their placing the three-truck unit onto an interstate freeway system is conduct that will naturally and probably result in injury when, as happened here, the driver requires maximum braking power in the face of a hazard of the road, and that they nevertheless did so with reckless disregard for the consequences.

The judgment of the District Court is affirmed.

---

10. There was also evidence from which the jury could find that defendants were indifferent to the issue of public safety. "[Counsel]: The question was: Do you feel that you have any responsibility toward the public when you put a vehicle out on the road? * * * [Ferrell Benjamin]: I don't myself." Trial Transcript at 397–98.