Hillsborough
No. 91-510

ROBERT THIBEAULT AND SUZANNE THIBEAULT,
CO–ADMINISTRATORS OF THE ESTATE OF
PENNY S. THIBEAULT

v.

MARK CAMPBELL

ROBERT THIBEAULT AND SUZANNE THIBEAULT,
CO–ADMINISTRATORS OF THE ESTATE OF
PENNY S. THIBEAULT

v.

PATTI PERNA

PATTI PERNA

v.

MARK CAMPBELL

MARK CAMPBELL

v.

PATTI PERNA

March 5, 1993

*Christy, Tessier & Innes*, of Manchester (*Scott F. Innes* on the brief and orally), for Robert Thibeault and Suzanne Thibeault.

*Wiggin & Nourie, P.A.*, of Manchester (*Dennis T. Ducharme* on the brief and orally), for Mark Campbell.

*Bernard J. Robertson*, of Exeter, by brief and orally, for the plaintiff, Patti Perna.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Donald J. Perrault* and *Susan J. Cheney* on the brief, and *Ms. Cheney* orally), for the defendant, Patti Perna.

BROCK, C.J.   These consolidated cases arise out of an automobile accident between two vehicles on November 7, 1987. The first vehicle was driven by Mark Campbell. The second vehicle was driven by Patti Perna and carried Penny Thibeault as a passenger. Campbell and Perna were both injured, and Thibeault died as a result of injuries sustained in the collision. Thibeault was rendered unconscious

on impact and did not regain consciousness before being pronounced dead at the hospital soon thereafter. Neither Perna nor Thibeault were wearing seat belts at the time of the accident. Thibeault's estate brought actions against Campbell and Perna for wrongful death. Campbell and Perna brought negligence actions against each other, seeking compensation for their injuries. The cases were consolidated, and a six-day trial was held before the Superior Court (*Perkins*, J.). Prior to trial, the court denied Campbell's motion to present evidence concerning Perna's and Thibeault's failure to wear seat belts, specifically ruling that no reference to seat belts could be made at trial.

The jury returned a verdict finding Campbell seventy percent at fault and Perna thirty percent at fault for the accident. The jury awarded Perna $450,000 against Campbell and awarded $1,500,000 to Thibeault's estate. After the jury's verdict, Campbell filed motions for remittitur with respect to the Perna and Thibeault verdicts and a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Perna as a defendant also filed a motion for remittitur with respect to the Thibeault verdict. All these motions were denied by the superior court. Campbell and Perna each raise several issues on appeal. We affirm in part, reverse in part, and remand.

The first question is whether the trial court erred in refusing to admit evidence that Perna and Thibeault were not wearing the seat belts available in the car at the time of the accident. Campbell argues that Perna's and Thibeault's failure to wear seat belts significantly contributed to their injuries and should be admitted as evidence of their comparative negligence. We disagree.

In *Piateck v. Swindell*, 84 N.H. 402, 151 A. 262 (1930), this court considered the possible negligence of a truck passenger who was injured in an accident while sitting on the floor of the truck's cab with his right leg hanging out of the cab and his foot resting on the running board. In holding that the plaintiff was not contributorily negligent, we reasoned that

> "[i]f it may be said that the plaintiff was careless to sit in such a position as he did, it was because of dangers likely to be encountered. And if in his position he took proper precautions and kept reasonable watch against such dangers, he is not to be held careless because he did not look out for dangers he had no occasion to anticipate. There is no carelessness in encountering dangers not reasonably to be sensed and not in fact known. . . . If his position was careless, it was

not so in his relationship with the defendant from whom no menace was indicated.

It is not negligent for one to assume that another will do his duty when there is no occasion to assume otherwise. . . ."

*Id.* at 403, 151 A. at 263–64.

More recently, in *Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 605 A.2d 208 (1992), we considered whether a person who leaves his keys in his vehicle is liable when his vehicle is stolen and the thief's careless driving injures another. Recognizing that the thief's negligent driving was the immediate cause of the injuries, we held that the mere failure to remove the keys from the vehicle, by itself, did not create an unreasonable risk of injury. *Id.* at 305, 605 A.2d at 213–14. Although the theft of the car and the thief's negligent driving were foreseeable events in the sense that they were possible occurrences, "[n]ot every risk that might be foreseen gives rise to a duty to avoid a course of conduct; a duty arises because the likelihood and magnitude of the risk perceived is such that the conduct is unreasonably dangerous." *Id.* The vehicle owner had no duty to guard against the events that caused the injuries because they did not present a reasonably foreseeable danger. *Id.* at 306, 605 A.2d at 214.

■■ The principles reflected in *Piateck* and *Manchenton* direct our reasoning in this case. In order for one's conduct to constitute tortious negligence, it must be in breach of an existing duty and create a foreseeable risk of harm to someone to whom that duty is owed. *See Manchenton*, 135 N.H. at 304, 605 A.2d at 213. The failure to wear a seat belt does not, by itself, create an unreasonable risk of injury. The injuries that occur in a case such as the one before us are the immediate result of a collision caused by the negligence of another. Although there is the potential for an accident every time an automobile is used, this mere possibility does not make an automobile occupant responsible for anticipating the accident-causing negligence of another. *See Piateck*, 84 N.H. at 403, 151 A. at 264; *see also Quick v. Crane*, 727 P.2d 1187, 1208 (Idaho 1986); *Ratterree v. Bartlett*, 238 Kan. 11, 18, 707 P.2d 1063, 1069 (1985); *Amend v. Bell*, 89 Wash. 2d 124, 132–33, 570 P.2d 138, 143 (1977). Because the accident-causing negligence of another driver is not considered a readily foreseeable danger, there can be no corresponding legal duty under the common law to guard against it by wearing a seat belt. *See Manchenton*, 135 N.H. at 305, 605 A.2d at 213–14. We therefore hold that evidence of a party's failure to use a seat belt is inadmissible to show

negligence where the nonuse may have contributed to the party's injuries but was not a cause of the collision itself.

Although the State legislature has not spoken on this issue directly, we find some support for our decision in past legislative action. On several occasions the legislature has rejected bills mandating adult seat belt use. *See* N.H.S. JOUR. 180–81 (1989) (voting SB 2 inexpedient to legislate); N.H.H.R. JOUR. 565–68 (1989) (voting HB 707 inexpedient to legislate); N.H.H.R. JOUR. 349–51 (1986) (voting HB 25 inexpedient to legislate); N.H.S. JOUR. 666–67 (1979) (voting SB 231 inexpedient to legislate). The legislature has enacted RSA 265:107-a (Supp. 1992), however, currently requiring children under twelve years of age to wear seat belts or be secured in a child passenger restraint. As part of this statute, the legislature has specifically provided that any violation of the statute shall not be used as evidence of a party's contributory negligence in a civil action. RSA 265:107-a, IV (Supp. 1992). This statute suggests that the legislature generally disfavors the admission of seat belt evidence to prove negligence.

The second question for our consideration is whether a decedent's estate may recover damages under the New Hampshire wrongful death statute, RSA 556:12, for any conscious pain and suffering endured by the decedent in anticipation of the fatal accident. Evidence of Thibeault's fearful reaction upon realizing the accident was imminent was presented at trial, and the court instructed the jury that it could consider such evidence in assessing damages. Both Campbell and Perna as defendants raise this question on appeal, arguing that the trial court erred in allowing the estate to recover for Thibeault's "pre-accident fright." We disagree.

■ ■ The relevant language of RSA 556:12 provides that in a case of wrongful death the decedent's estate may recover for "the mental and physical pain suffered by the deceased in consequence of the injury." This court clearly has held that the mental anguish suffered by a decedent in realization and anticipation of an impending accident is compensable under the wrongful death statute. *Yeaton v. Railroad*, 73 N.H. 285, 288, 61 A. 522, 524 (1905); *see Welch v. Railroad*, 78 N.H. 277, 279, 99 A. 296, 298 (1916). We recognize that "[w]hen the legislature reenacts a statute on which a repeated practical construction has been placed by the Bench and Bar, that reenactment constitutes a legislative adoption of the longstanding construction." *Brooks v. Padula*, 125 N.H. 668, 671, 485 A.2d 1032, 1034 (1984) (quotation omitted). The precedent acknowledging the

compensability of pre-accident mental anguish under the wrongful death statute has stood for over eighty-seven years, and in that time the relevant language of the statute has gone essentially unchanged. *Compare* RSA 556:12 (1974) *with* PS 191:12 (1891). The legislature has given no indication of an intention to change the scope of the wrongful death statute, and we see no reason now to disregard or modify our longstanding precedent.

The next issue we must address involves the reasonableness of the jury's damages verdicts and whether the trial court erred in denying the defendants' motions for remittitur. Campbell argues that the jury verdicts awarding $1,500,000 and $450,000 as damages to Thibeault and Perna, respectively, were so excessive and clearly against the weight of the evidence that the trial court should have ordered remittitur or a new trial on damages. Perna makes a similar argument as a defendant with respect to the Thibeault verdict, although she contends that the damage award she received as a plaintiff was not excessive.

■ A trial judge may order remittitur or, in the alternative, order a new trial on the issue of damages if the amount of a jury's verdict is "conclusively against the weight of the evidence" and "manifestly exorbitant." *Daigle v. City of Portsmouth*, 129 N.H. 561, 588, 534 A.2d 689, 704 (1987) (quotations omitted). A trial judge has the responsibility "not only to see that the trial is fairly conducted but also to correct or vacate what turns out to be an unfair result. To inspect the product is no less a duty than to oversee the process of production." *Reid v. Spadone Mach. Co.*, 119 N.H. 457, 466, 404 A.2d 1094, 1100 (1979) (quotation omitted). We will not reverse the trial court's decision not to order remittitur unless we find the decision to be unreasonable. *Daigle*, 129 N.H. at 588, 534 A.2d at 704.

■ Although the Perna verdict of $450,000 is certainly high, we cannot say that the trial court erred in denying Campbell's motion for remittitur or a new trial on damages. Although Perna presented evidence of only $23,851.16 in actual medical expenses and lost wages, there was sufficient evidence presented regarding her pain and suffering to prevent the verdict from being rendered patently unreasonable. Among other injuries, Perna sustained a broken nose, broken jaw, broken facial bones, broken and knocked out teeth, double vision, a broken foot, lacerations, and scarring, and she endured a painful recovery. Based on a review of the record, we do not believe that the jury's verdict was conclusively against the weight of the evidence and manifestly exorbitant.

The same, however, cannot be said for the $1,500,000 Thibeault verdict. A co-executor of Thibeault's estate testified that the estate incurred $6,726.40 in funeral and medical expenses. Through the testimony of an expert economist, the average expected damage to the estate in the form of lost earnings was projected at a present value of either $320,000 or $367,000. Taking the estate's damages at their highest estimate, over $1,100,000 of the jury's calculation of damages was not specifically proven at trial. Aside from expenses and lost earnings, the only other damages specifically provided for under the wrongful death statute are for any mental and physical pain and suffering experienced by the decedent. See RSA 556:12. Because she never regained consciousness after the accident, Thibeault's only compensable pain and suffering would be the seconds of mental anguish experienced in anticipation of the accident. Some evidence of such an experience was presented at trial. Regardless of whether the jury estimated Thibeault's pain and suffering at $1,100,000 or assessed $1,500,000 in damages for some other reason, we find the jury's verdict to be manifestly exorbitant and unreasonable in light of the evidence presented. We hold that the trial court erred in refusing to grant a remittitur or, in the alternative, order a new trial on damages.

The estate attempts to justify the jury's verdict in a number of ways. Noting that Thibeault was earning more than the average person in her age category, the estate argues that it was proper for the jury to expand upon the average projections presented. The estate also contends that the jury's verdict is reasonable compensation for the moment of apprehension experienced by Thibeault once she realized the accident was going to happen. We cannot believe that a reasonable jury, even using the proffered damage estimate of $373,726.40 as only a starting point, could conclude that $1,500,000 was an appropriate and accurate measure of injury compensable under the wrongful death statute. Accordingly, we remand this case for a new trial on the amount of damages to be awarded Thibeault's estate.

*Affirmed in part; reversed in part; remanded.*

JOHNSON, J., dissented; the others concurred.

JOHNSON, J., dissenting: I dissent from the majority's holding that evidence of a party's failure to use a seat belt is inadmissible to show the party's comparative negligence. In particular, I disagree with the

majority's conclusion that automobile accidents are insufficiently foreseeable to impose a duty on drivers and passengers to take reasonable steps to protect themselves from harm. The majority aptly considers the issue of foreseeability dispositive of this case, *see Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 305, 605 A.2d 208, 213–14 (1992), but misapplies the reasoning of *Manchenton* and *Piateck v. Swindell*, 84 N.H. 402, 403, 151 A. 262, 263–64 (1930), to support its conclusion.

*Manchenton* did not involve an issue of an injured party's comparative negligence, *Manchenton*, 135 N.H. at 299, 605 A.2d at 210, and therefore is inapposite. The case, moreover, involved circumstances considerably less foreseeable to the reasonable person than the automobile collision that engendered this lawsuit. *Piateck*, decided in 1930, is similarly inapposite. It was written long before a national consciousness concerning motor vehicle safety had risen to its present level. Today, federal motor vehicle safety regulations occupy reams of paper in the Code of Federal Regulations, 49 C.F.R. § 571 (1991), and mandatory installation of seat belts in automobiles by manufacturers has been a matter of course since 1962, *Bentzler v. Braun*, 34 Wis. 2d 362, 385, 149 N.W.2d 626, 639 (1967).

It is common knowledge that motor vehicle accidents are one of the leading causes of death in this country. THE WORLD ALMANAC AND BOOK OF FACTS 941 (Mark S. Hoffman *et al.* eds., 1992); Bureau of the Census, United States Department of Commerce, STATISTICAL ABSTRACT OF THE UNITED STATES: 1987 75 (107th ed. 1986). In addition,

> "it is obvious that, on the average, persons using seat belts are less likely to sustain injury and, if injured, the injuries are likely to be less serious. On the basis of this experience, and as a matter of common knowledge, an occupant of an automobile either knows or should know of the additional safety factor produced by the use of seat belts."

*Bentzler*, 34 Wis. 2d at 386–87, 149 N.W.2d at 640 (footnote omitted); *see also Insurance Co. of North America v. Pasakarnis*, 451 So. 2d 447, 453 (Fla. 1984); *Lowe v. Estate Motors Ltd.*, 428 Mich. 439, 454, 410 N.W.2d 706, 715 (1987); *Waterson v. General Motors Corp.*, 111 N.J. 238, 269, 544 A.2d 357, 373 (1988). Our own legislature has recognized these truths by enacting RSA 265:107-a (Supp. 1992) (requiring children under twelve years of age to wear seat belts or be secured in a child passenger restraint) as an obvious safety measure. To say, as the majority does, that a plaintiff owes no duty to wear a

seat belt because "the accident-causing negligence of another driver is not considered a readily foreseeable danger," defies common experience.

I conclude that such negligence is reasonably foreseeable and therefore would adopt the reasoning of the Supreme Court of Florida:

> "[T]he failure to expend the minimal effort required to fasten an available safety device which has been put there specifically in order to reduce or avoid injuries from a subsequent accident is, on the very face of the matter, obviously pertinent and thus should be deemed admissible in an action for damages, part of which would not have been sustained if the seat belt had been used."

*Pasakarnis*, 451 So. 2d at 453 (quotation omitted). I would join the growing number of States that hold that evidence of failure to wear an available and fully operational seat belt may be considered by the jury in assessing a plaintiff's damages where the so-called "seat belt defense" was adequately pled and it was shown by competent evidence that failure to use the seat belt produced or contributed substantially to producing at least a portion of the damages. *See id.* at 454; *Potts v. Benjamin*, 882 F.2d 1320, 1322–23 (8th Cir. 1989); *Smith v. Goodyear Tire & Rubber Co.*, 600 F. Supp. 1561, 1568 (D. Vt. 1985); *Hutchins v. Schwartz*, 724 P.2d 1194, 1199 (Alaska 1986); *Wemyss v. Coleman*, 729 S.W.2d 174, 179 (Ky. 1987); *Lowe*, 428 Mich. at 455, 410 N.W.2d at 715–16; *Dahl v. BMW*, 304 Or. 558, 566, 748 P.2d 77, 81–82 (1987); *Bentzler*, 34 Wis. 2d at 387–88, 149 N.W.2d at 640–41.

The majority's citation to RSA 265:107-a, IV (Supp. 1992) does not alter my resolution of this problem. This particular provision of the child seat belt law states: "A violation of this section shall not be used as evidence of contributory negligence in any civil action." While the majority interprets this as an indication of general legislative disapproval of the admission of seat belt evidence to prove negligence, I do not. The provision prohibits admission of evidence that the statute was violated—not that a child was not wearing a seat belt. Accordingly, RSA 265:107-a, IV (Supp. 1992) merely evinces an intent to prohibit evidence of lack of seat belt use from being considered *per se* negligence, and the defendant is left to prove that, in his or her particular case, lack of seat belt use was in fact negligent and contributed to the plaintiff's injuries.

Even if the legislature did not have this distinction in mind when it enacted RSA 265:107-a, IV (Supp. 1992), there are two more reasons

not to apply it here. First, a child suing for injuries suffered in a motor vehicle accident is in a different position than an adult with regard to seat belt use. RSA 265:107-a (Supp. 1992) makes it a violation for a person to operate a motor vehicle with a child occupant unless the child is wearing a seat belt or secured in an appropriate restraint. Thus, it is the adult's responsibility to make sure the child is secured, and the child cannot fairly be held contributorily negligent in a damages action for the child's injuries. In a damages action for an adult's injuries, the question of the adult's contributory negligence *can* fairly be raised because it is the adult who is responsible for his or her own seat belt use. Second, RSA 265:107-a, IV (Supp. 1992) refers only to violations of the child restraint law. It does not in any way refer to instances of adults failing to use seat belts or imply that the defense of contributory negligence may not be pled, argued, and proven when it is discovered that a plaintiff did not use an available seat belt.

For the above reasons, I respectfully dissent.