U.S. District Court
No. 97-657

JOEL HUNGERFORD

v.

SUSAN L. JONES

December 18, 1998

*Paul A. Maggiotto*, of Concord, by brief and orally, and *Upton, Sanders & Smith*, of Concord (*Robert Upton, II* on the brief), for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Edward M. Kaplan* and *Sarah G. Smith* on the brief, and *Mr. Kaplan* orally), for the defendant.

*Thomas A. Pavlinic*, of Annapolis, Maryland, and *Paul A. Maggiotto*, of Concord, by brief for the False Memory Syndrome Foundation, as *amicus curiae*.

BRODERICK, J. Pursuant to Supreme Court Rule 34, the United States District Court for the District of New Hampshire (*McAuliffe*, J.) certified to us the following questions of law:

> 1. Does a mental health care provider owe a legal duty to the father of an adult patient to diagnose and treat the patient with the requisite skill and competence of the profession when the diagnosis is that the father sexually abused or assaulted the patient?

> 2. Does a mental health care provider owe a duty to act with reasonable care to avoid foreseeable harm to the father of an adult patient resulting from treatment or other action taken in relation to mental health conditions arising from the diagnosis of past sexual abuse or assault by said father?

We respond affirmatively to both questions with the limitations expressed below.

I

■ Because these issues arise in the context of a motion to dismiss, we assume the truth of the factual allegations recited by the plaintiff in his complaint and by the district court in its certification order, and construe all inferences in the light most favorable to the plaintiff. *See Panto v. Moore Business Forms, Inc.*, 130 N.H. 730, 732, 547 A.2d 260, 262 (1988).

In August or September 1992, defendant Susan L. Jones began treating Laura B., who was then in her mid-twenties. Jones, a social worker, had limited experience in treating patients allegedly afflicted with repressed memories of sexual assault. In fact, her only training in the area consisted of a lecture on memory retrieval techniques that she attended during a weekend symposium. Nevertheless, Jones represented to Laura that she was a qualified and

experienced mental health therapist in the treatment of problems associated with incest and sexual abuse. She failed to inform Laura of her limited experience and training in memory retrieval or explain the controversy in the mental health community regarding the reliability and validity of the phenomenon and techniques she was employing, including the potential for implanting false memories. In addition, Jones did not discuss other treatment options with Laura.

Laura had no knowledge or memory of being sexually abused by her father when she began therapy. During the course of therapy, however, Jones led Laura to believe that her nightmares and anxiety attacks were actually "flashbacks" and "recovered memories" of episodes of sexual assault and abuse by her father. Jones also persuaded Laura that her physical sensations and pain were "body memories" indicative of memory repression or traumatic amnesia involving incidents of sexual abuse. Jones concluded that Laura's psychological problems, including her difficulties with intimate relationships, were caused by her father's sexual abuse.

Jones' repressed memory therapy included a memory retrieval technique she referred to as "visualization" or "imagery," in which she led Laura into a self-induced trance to uncover allegedly lost memories of sexual abuse. As a result, Jones caused Laura to "recall" five episodes of sexual assault by her father. The alleged episodes first began when Laura was five years old and ended only two nights before her wedding. Jones never consulted any mental health professionals for assistance in Laura's therapy.

After learning of his daughter's accusations, plaintiff Joel Hungerford authorized his therapist to communicate with Jones in an effort to help his daughter realize that her "memories" were false. In the face of their communications, Jones remained firm in her diagnosis.

At Jones' direction, Laura ceased all contact with her father in October 1992. The following spring, Jones' continuing direction and support led Laura to file a complaint against her father for aggravated felonious sexual assault with the Amherst Police Department (police). Jones contacted the police to validate the truth of Laura's recovered memories, convey her belief that Laura was assaulted by Hungerford, and encourage his prosecution as a means of "empowering" her patient. Jones also met with the Hillsborough County Attorney to further assist in the prosecution.

Jones' actions in therapy and with the police led to indictments against Hungerford charging two counts of aggravated felonious sexual assault. In May 1995, the Superior Court (*Groff*, J.) ruled

that Laura's "memories" of assault recovered during therapy were not admissible at trial because they were not scientifically reliable. This court affirmed. *See State v. Hungerford*, 142 N.H. 110, 134, 697 A.2d 916, 930 (1997).

Thereafter, Hungerford filed suit against Jones in the federal district court alleging that Jones' negligent treatment and diagnosis of his daughter resulted in false accusations of sexual abuse and criminal charges. Jones moved to dismiss the complaint, asserting that she owed Hungerford no duty of care. The district court then certified two questions to this court asking whether, and to what extent, a mental health care provider (therapist) owes a duty of care to the father of an adult patient when he is identified as the perpetrator of sexual abuse in the course of the patient's therapy. Both questions present issues of first impression.

## II

"Whether a duty exists in a particular case is a question of law." *Walls v. Oxford Management Co.*, 137 N.H. 653, 656, 633 A.2d 103, 104 (1993). This court has recognized that a professional owes a duty of care to third parties in limited circumstances. *See, e.g., Simpson v. Calivas*, 139 N.H. 1, 5-6, 650 A.2d 318, 322 (1994) (duty of attorney drafting will to third party beneficiaries); *Spherex, Inc. v. Alexander Grant & Co.*, 122 N.H. 898, 903-04, 451 A.2d 1308, 1312 (1982) (duty of accountants to those relying on their work, regardless of privity). In so doing, we reasoned that the existence of a duty does not arise solely from the relationship between the parties, but also from the need for "protection against reasonably foreseeable harm." *Morvay v. Hanover Ins. Cos.*, 127 N.H. 723, 725, 506 A.2d 333, 334 (1986). While "not every risk [of harm] that might be foreseen gives rise to a duty . . . a duty arises [if] the likelihood and magnitude of the risk perceived is such that the conduct is unreasonably dangerous." *Thibeault v. Campbell*, 136 N.H. 698, 701, 622 A.2d 212, 214 (1993) (quotation and brackets omitted). Thus, parties owe a duty to those foreseeably endangered by their conduct with respect to those risks whose likelihood and magnitude make the conduct unreasonably dangerous. *See Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 304, 605 A.2d 208, 213 (1992).

When determining whether a duty is owed, we examine the societal interest involved, the severity of the risk, the likelihood of occurrence, the relationship between the parties, and the burden upon the defendant. *Williams v. O'Brien*, 140 N.H. 595, 599, 669 A.2d 810, 813 (1995); *see* RESTATEMENT (SECOND) OF TORTS § 291

(1965) (act is negligent if the risk involved is so great that it outweighs the utility of the act). We review these factors in light of the allegations before us.

Jurisdictions which have considered a therapist's duty to nonpatient third parties have commonly recognized the social utility in detecting and eradicating sexual abuse. *See, e.g., Montoya by Montoya v. Bebensee*, 761 P.2d 285, 288 (Colo. Ct. App. 1988); *Bird v. W.C.W.*, 868 S.W.2d 767, 770 (Tex. 1994). We agree and further recognize the critical role of mental health professionals in identifying sexual abuse. Protecting children from such abuse and promoting healing for abuse survivors are important goals. *See* RSA 169-C:29 (1994) (listing persons required to report child abuse); Note, *Has Time Rewritten Every Line?: Recovered-Memory Therapy and the Potential Expansion of Psychotherapist Liability*, 53 WASH. & LEE L. REV. 763, 795 (1996) [hereinafter *Recovered-Memory Therapy*]. We must, however, be vigilant in balancing these critical societal interests against the need to protect parents, families, and society from false accusations of sexual abuse. Though not a simple task, such a delicate balance must be achieved in light of the potentially devastating consequences stemming from misdiagnosis.

It is indisputable that "being labeled a child abuser [is] one of the most loathsome labels in society" and most often results in grave physical, emotional, professional, and personal ramifications. *S. v. Child & Adolescent Treatment*, 614 N.Y.S.2d 661, 666-67 (Sup. Ct. 1994) (quotation omitted). This is particularly so where a parent has been identified as the perpetrator. Even when such an accusation is proven to be false, it is unlikely that social stigma, damage to personal relationships, and emotional turmoil can be avoided. *See id.; Recovered-Memory Therapy, supra* at 792; Note, *Ridicule or Recourse: Parents Falsely Accused of Past Sexual Abuse Fight Back*, 11 J.L. & HEALTH 303, 304 (1996-97) [hereinafter *Ridicule or Recourse*]. In fact, the harm caused by misdiagnosis often extends beyond the accused parent and devastates the entire family. *See Zamstein v. Marvasti*, 692 A.2d 781, 794 (Conn. 1997) (*Berdon, J., dissenting*) (noting that therapist's negligent diagnosis of sexual abuse could destroy relationship between accused parent and child); *Ridicule or Recourse, supra* at 329. Society also suffers because false accusations cast doubt on true claims of abuse, and thus undermine valuable efforts to identify and eradicate sexual abuse. *Ridicule or Recourse, supra* at 331.

The severity and likelihood of harm is compelling and clearly foreseeable when false accusations of sexual abuse arise from

misdiagnosis. As explained below, the potential for harm is magnified when, as alleged in this case: (1) the accused is the patient's father; (2) the therapist lacks appropriate experience and qualifications; (3) the therapist uses a psychological phenomenon or technique not generally accepted in the mental health community; and (4) the accusations of abuse are made public.

First, due to the prevalence of intrafamily sexual abuse, family members are more likely victims of false accusations than nonfamily members. *See S. v. Child & Adolescent Treatment*, 614 N.Y.S.2d at 666 (allegations of abuse in divorce or custody proceedings have become more frequent); *Recovered-Memory Therapy, supra* at 792. Second, the likelihood of harm is considerable where an unqualified therapist, *e.g.*, one lacking in appropriate training or experience, attempts a diagnosis.

Third, the prospect of misdiagnosis and resultant false accusations is enhanced where a therapist bases a diagnosis on a psychological phenomenon or technique not generally accepted in the mental health community. *Ridicule or Recourse, supra* at 306; *see Hungerford*, 142 N.H. at 133-34, 697 A.2d at 930. The concept of repressed memories of sexual abuse is extremely controversial. *See Hungerford*, 142 N.H. at 130, 697 A.2d at 925. Moreover, the various techniques used by therapists to "recover" allegedly repressed memories of past sexual abuse are also controversial and have been criticized as being suggestive and resulting in false memories. *See Recovered-Memory Therapy, supra* at 770; *Hungerford*, 142 N.H. at 125-26, 697 A.2d at 924-25 (determination of reliability incorporates examination of therapeutic technique).

Finally, the likelihood of harm to an accused parent is exponentially compounded when treating therapists take public action based on false accusations of sexual abuse or encourage their patients to do so. Public action encompasses any effort to make the allegations common knowledge in the community. In this situation, the foreseeability of harm is so great that public policy weighs in favor of imposing on the therapist a duty of care to the accused parent throughout the therapeutic process. *See Card v. Blakeslee*, 937 P.2d 846, 850 (Colo. Ct. App. 1996) (limiting duty to where therapist publishes report accusing plaintiff of abuse). We recognize, however, that there are circumstances in which the therapist is immune from liability. *See, e.g.*, RSA 169-C:31 (Supp. 1998) (immunity for good faith report of child abuse or neglect); *Provencher v. Buzzell-Plourde Assoc.*, 142 N.H. 848, 853, 711 A.2d 251, 255 (1998) (statements made in course of judicial proceedings are privileged from civil liability if pertinent or relevant to proceedings). *But see*

*James W. v. Superior Court (Goodfriend)*, 21 Cal. Rptr. 2d 169, 174-76 (Ct. App. 1993) (family counselor not immune for actions taken beyond the child abuse reporting statute).

### III

Several jurisdictions have struggled with determining whether, and under what circumstances, therapists owe a duty to third parties, and have reached differing conclusions based on competing public policy considerations. *See, e.g., Zamstein*, 692 A.2d at 787; *S. v. Child & Adolescent Treatment*, 614 N.Y.S.2d at 666-67. Those courts refusing to recognize a duty of care commonly reason that to do so "would carry with it the impermissible risk of discouraging [therapists] . . . from performing sexual abuse evaluations of children altogether, out of a fear of liability to the very persons whose conduct they may implicate." *Zamstein*, 692 A.2d at 787; *see Flanders v. Cooper*, 706 A.2d 589, 591 (Me. 1998) (concerned about restricting a physical therapist's treatment choices). This reasoning, however, overlooks the fact that the standard of care by which a therapist's conduct is measured is not heightened. Our holding today imposes "no more than what a therapist is already bound to provide — a competent and carefully considered professional judgment." *Althaus by Althaus v. Cohen*, 710 A.2d 1147, 1157 (Pa. Super. Ct. 1998); *see Bebensee*, 761 P.2d at 288-89.

We recognize that in most circumstances, the balance between protecting children from sexual abuse and guarding against false accusations is best struck by permitting the therapist broad latitude in ferreting out signs or symptoms of past sexual abuse without fear of liability to the accused. Where the alleged perpetrator is the patient's parent and the accusation is made public by, or at the encouragement of, the therapist, however, the circle of immunity can be justifiably diminished. In fact, a therapist's diagnosis of sexual abuse that identifies a perpetrator inherently consists of a conclusive determination concerning the suspected abuser as well as the patient, regardless of the accused's involvement in the therapy process. *S. v. Child & Adolescent Treatment*, 614 N.Y.S.2d at 666; *Bebensee*, 761 P.2d at 288-89. Because the therapist is in the best position to avoid harm to the accused parent and is solely responsible for the treatment procedure, an accused parent should have the right to reasonably expect that a determination of sexual abuse, "touching him or her as profoundly as it will, will be carefully made," *S. v. Child & Adolescent Treatment*, 614 N.Y.S.2d at 666, in those cases where the diagnosis is publicized.

## IV

Imposing a duty of care on therapists who elect to publicize accusations of sexual abuse against parents, or who encourage patients to do so, should not unreasonably inhibit sexual abuse diagnosis or therapy. Recognizing such a duty where parents are implicated, however, should result in greater protection for parents and families from unqualified or unaccepted therapeutic diagnoses. While imposition of this duty may impair societal efforts to bring some sexual abusers to justice, we recognize its need due to the increased foreseeability and devastating consequences of publicized false accusations against parents. "[N]o social utility can be derived from shielding therapists who make cavalier diagnoses that have profound detrimental effects on the lives of the accused and their family." *Althaus*, 710 A.2d at 1157.

■■ Accordingly, in response to the district court's questions, we hold that a therapist owes an accused parent a duty of care in the diagnosis and treatment of an adult patient for sexual abuse where the therapist or the patient, acting on the encouragement, recommendation, or instruction of the therapist, takes public action concerning the accusation. In such instances, the social utility of detecting and punishing sexual abusers and maintaining the breadth of treatment choices for patients is outweighed by the substantial risk of severe harm to falsely accused parents, the family unit, and society. *See Bebensee*, 761 P.2d at 288-89. The duty of care to the accused parent is breached by the therapist when the publicized misdiagnosis results from (1) use of psychological phenomena or techniques not generally accepted in the mental health community, or (2) lack of professional qualification.

Accordingly, we answer the certified questions in the affirmative with the limitations outlined herein. We offer no opinion concerning whether the scope of the duty may include third parties other than a patient's parents.

*Remanded.*

HORTON, J., did not sit; the others concurred.