Est. of C. Warren v. American Marine  CV-00-310-JD  04/30/02

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Estate of Chad Warren,
by Sherri Warren,
Administrator, et al.

        v.                              Civil No. 00-310-JD
                                        Opinion No. 2002 DNH 087
American Marine Holdings


                              O R D E R


     The plaintiffs bring an action alleging product liability
and other state law claims arising from a boating accident in
which Chad Warren was killed.  The defendant, American Marine
Holdings, asserts a variety of affirmative defenses including
comparative fault, product misuse, and assumption of the risk.
The plaintiffs move to exclude all evidence of Warren's nonuse of
a life vest or a kill-switch lanyard at the time of the accident.
American Marine objects.



                            Background

     On September 8, 1997, Chad Warren and two of his fellow
employees, Thomas Caucis and Matthew Powell, took a 1998 thirty-
three foot Donzi power boat equipped with two 500 horsepower
engines for a test ride on Lake Winnipesaukee.  Warren, Powell,
and Caucis were employees of Goodhue and Hawkins Marine in
Wolfeboro, New Hampshire.  Warren operated the boat, and Powell

and Caucis were passengers.

During the outing, Warren reached a speed of seventy miles per hour. He decelerated and began a left turn. The plaintiffs allege that the boat suddenly dropped to the right with the bow down and the stern out of the water. As a result, Powell and Caucis were knocked out of the boat. Warren was knocked out of place but grabbed a bar on the back of the boat as he was falling out. While hanging from the back of the boat, he came into contact with the motors' propellers and was killed.

The plaintiffs allege that the boat was defectively designed or manufactured, which caused it to have operational characteristics that were unsafe for high-speed operation including turns, and that it lacked necessary warnings. They further allege that the boat's defective design or manufacture caused Warren's death.

At the time of the accident, Warren was not wearing a life vest or the kill-switch lanyard that was provided in the boat. The kill-switch feature included a lanyard that was supposed to be attached to the operator. The switch was intended to stop the boat's motors if the operator went further than the length of the lanyard from the operating area. The plaintiffs do not make a claim based on the operation of the motors, the kill switch, or the presence or absence of particular safety features.

2

## Discussion

The plaintiffs move to exclude all evidence that Warren was not wearing a life vest or the kill-switch lanyard at the time of the accident, on the ground that such evidence is not relevant. In support of the motion, the plaintiffs rely on the New Hampshire rule that nonuse of seatbelts "is inadmissible to show negligence where the nonuse may have contributed to the party's injuries but was not a cause of the collision itself." Thibeault v. Campbell, 136 N.H. 698, 701-02 (1993). Nonuse of a seatbelt is also inadmissible to show a plaintiff's failure to mitigate damages. See Forsberg v. Volkswagen of Am., Inc., 769 F. Supp. 33, 36-37 (D.N.H. 1990). The rule has been extended in this district to bar evidence of a plaintiff's failure to wear a military helmet while riding in a vehicle. See Ritch v. A M Gen. Corp., 1997 WL 834214, at *2-3 (D.N.H. Nov. 17, 1997).

American Marine argues that the seatbelt rule is not applicable to the circumstances of this case because a kill-switch lanyard affects the operation of the boat, while a seatbelt is merely a passive safety device for one person.[1]

---

[1]To the extent that American Marine argues that a different analysis would apply to nonuse of the lanyard because it affects the safety of others in the boat, that argument is inapposite in this case where the plaintiffs' claims are based on the accident and injury to Chad Warren, who was operating the boat.

3

American Marine asserts that the kill-switch would have stopped the motors on the boat which would have prevented Warren from being ejected from the boat and being hit and killed by the motor propellers. American Marine characterizes Warren's ejection from the boat and his contact with the propellers as the accident at issue in the case.

The plaintiffs' claims, however, are based on allegations of a defect in the boat, along with a lack of warnings, that caused it to be unsafe for high speed operation including turns. Because of the defect, they claim, the boat suddenly dropped to the right during a left turn, with the bow down and the stern out of the water. As a result of the boat's unexpected action during the turn, the passengers and Warren were ejected from the boat, although Warren managed to catch onto the back of the boat. The accident the plaintiffs allege is the boat's action during the turn, which lead to the subsequent events.[2]

American Marine does not suggest that wearing either a life vest or the kill-switch lanyard would have affected the operation of the boat during the turn. In that regard, this case is much like a car accident in which the driver of the car, because he was not wearing a seatbelt at the time of the accident, is thrown

---

[2]In contrast, the plaintiffs do not allege defects in the safety features of the kill switch or the motors.

4

around in the car or ejected from the car and injured, although he might not have been injured at all if he had been wearing the seatbelt. Therefore, although the kill-switch lanyard might have prevented some or all of Warren's injuries, his failure to wear the lanyard did not cause the boat's unexpected action during the turn, which is the accident alleged by the plaintiffs.

American contends that the circumstances here differ from those in seatbelt cases because unlike the lack of foreseeability of a car accident, "the possibility of being thrown from the operator's control position or ejected from a power boat was clearly foreseeable to the plaintiff." Def. Mem. at 6. In Thibeault, the court considered whether the failure to wear a seatbelt in a car created an unreasonable risk of harm so as to incur comparative fault. See 136 N.H. at 701. The court held: "Although there is the potential for an accident every time an automobile is used, this mere possibility does not make an automobile occupant responsible for anticipating the accident-causing negligence of another." Id. (Emphasis added.)

American Marine asserts only a "possibility" of being thrown from the operator's position or ejected from the boat in this case, and the record presented shows no greater likelihood of harm. As in Thibeault, the mere possibility that the boat might be in an accident does not make Warren responsible for

5

anticipating the allegedly defective condition of the boat or the resulting harm.

American Marine also contends that when an employer requires the use of safety equipment, other jurisdictions have permitted evidence of an employee's failure to use the equipment. In Walsh v. Emergency One, Inc., 26 F.3d 1417, 1421 n.2 (7th Cir. 1994), the only case cited by American Marine, the Seventh Circuit distinguished an Illinois case pertaining to assumption of the risk and seatbelt use on the ground that the plaintiff, Walsh, as a fireman was required to wear a seatbelt. As a result, the court concluded, the plaintiff had a duty to wear his seatbelt and breach of the duty was evidence of his assuming the risk. See id.

American Marine argues that Goodhue and Hawkins Marine had a policy requiring its employees to use the kill-switch lanyard, so that Warren's failure to do so is admissible evidence of his assumption of the risk of his injuries. The employer's policy, American Marine asserts, may be inferred from statements made by his fellow employee, Thomas Caucis, after the accident.

When asked what the company policy was on the kill-switch lanyard, Caucis said: "Ah, I'm not sure, ah it's done really, I was just always told it was a safety issue to have the lanyard hooked to your body somewhere while you are on the way." Def.

6

Ex. 8 at 4. In response to a question about who told him the policy, Caucis said, "Um, when I first started working there I just noticed that ah, you know people were doing it and ah, I don't remember quite who it was but a boat that I was getting into one day, um, ah, they were just going over starting procedures and things like that . . . I wish I could recall who it was, . . . one of the things was the lanyard, they said that it should be hooked to you. I told them that we had outboards that were like that." Id. at 4-5.

Caucis's remarks fall far short of establishing that Goodhue and Hawkins required their employees to wear the kill-switch lanyard when operating boats. American Marine offers nothing from Goodhue and Hawkins to show that such a policy existed. It is therefore unnecessary to consider whether the Seventh Circuit's analysis, based on Illinois law pertinent to an assumption of the risk defense, would be applicable here. See, e.g., Nutbrown v. Mount Cranmore, Inc., 140 N.H. 675, 681-82 (1996) ("The doctrine of primary assumption of the risk, as a common law defense, has been rejected by this court.") (citing Bolduc v. Crain, 104 N.H. 163, 166-68 (1962)).

Relying primarily on crashworthiness cases, American Marine contends that evidence of the nonuse of seatbelts has been held to be relevant to product misuse or assumption of the risk. See,

7

e.g., <u>Brown v. Ford Motor Co.</u>, 67 F. Supp. 2d 581, 582 (E.D. Va. 1999. Under the crashworthiness doctrine, a manufacturer is liable if "the construction or design of its product has caused separate or enhanced injuries in the course of an initial accident brought about by an independent cause." <u>Trull v. Volkswagen of Am.</u>, 145 N.H. 259, 261 (2000) (internal quotation omitted). That is not the plaintiffs' claim in this case.

The rule under New Hampshire law, applicable to this case, is that evidence of seatbelt nonuse is not admissible to show fault or failure to mitigate damages. <u>See</u> <u>Thibeault</u>, 136 N.H. at 701-02; <u>Forsberg</u>, 769 F. Supp. at 36-37. The rule is applicable to preclude evidence of the nonuse of other safety devices to show fault or failure to mitigate damages. <u>See</u> <u>Ritch</u>, 1997 WL 83214, at *2-3. The concept of comparative fault is sufficiently similar to product misuse to apply the rule in the context of product liability claims. <u>See, e.g.</u>, <u>Reid v. Spadone</u>, 119 N.H. 457, 465 (1979). American Marine's arguments to the contrary are not persuasive.

Therefore, American Marine is precluded from introducing evidence that Warren was not wearing a life vest or the kill-switch lanyard at the time of the accident for the purpose of showing comparative fault, product misuse, assumption of the risk, or failure to mitigate damages.

8

<u>Conclusion</u>

For the foregoing reasons, the plaintiffs' motion (document no. 27) is granted.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

April 30, 2002

cc:  Leslie C. Nixon, Esquire
     Kenneth G. Bouchard, Esquie