NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____


Belknap
No. 2012-902


KENNETH LAHM

v.

MICHAEL FARRINGTON & a.

Argued: November 13, 2013
Opinion Issued: March 14, 2014

Michael J. Sheehan, of Concord, by brief and orally, for the plaintiff.

Gallagher, Callahan & Gartrell, P.C., of Concord (Charles P. Bauer and Robert J. Dietel on the brief, and Mr. Dietel orally), for the defendants.

Joseph A. Foster, attorney general (Stephen D. Fuller, senior assistant attorney general, on the brief and orally), for the State of New Hampshire, as amicus curiae.

Terence M. O'Rourke, assistant county attorney, by brief and orally, for the Carroll County Attorney's Office, as amicus curiae.

Rath, Young and Pignatelli, P.C., of Concord (Michael S. Lewis on the brief and orally), for the New Hampshire Coalition Against Domestic and Sexual Violence, as amicus curiae.

William Hart, of Derry, by brief, and Cullen Collimore PLLC, of Nashua (Brian J.S. Cullen and Shelagh C.N. Michaud on the brief), for the New Hampshire Association of Chiefs of Police, as amicus curiae.

Ransmeier & Spellman, P.C., of Concord (Andrew B. Livernois on the brief), for Primex, as amicus curiae.

HICKS, J.  The plaintiff, Kenneth Lahm, appeals an order of the Superior Court (O'Neill, J.) granting summary judgment to the defendants, Detective Michael Farrington and the Town of Tilton (Town), in this negligence action. We affirm.

The trial court found, or the record supports, the following facts.  On February 28 and 29, 2008, Farrington interviewed an alleged victim who was recovering from severe burns and bruises at Concord Hospital, and who stated that she believed she had been sexually assaulted.  The alleged victim claimed that, three days earlier, she had gone home with Lahm after drinking approximately four beers at a bar.  She claimed that, upon arriving at Lahm's house, Lahm gave her two drinks containing Red Bull, after which she "passed out" and did not remember anything until waking three days later in Lahm's bed, without any clothes, and discovering severe burns and bruises on her body.  A urinalysis test detected the presence of multiple drugs.

After concluding his interview with the alleged victim, Farrington applied for warrants to arrest Lahm for second-degree assault, and to search his property for evidence of the crime.  On February 29, 2008, a justice of the peace found probable cause to arrest Lahm, and issued an arrest warrant. That same day, a district court judge found probable cause to believe that evidence of aggravated felonious sexual assault may be found on Lahm's property, and issued a search warrant.  Both warrants were executed on March 1, 2008.  Following Lahm's arrest and the search of his house, an evidentiary probable cause hearing was held on April 14, 2008, at which a judge found probable cause that Lahm had committed second-degree assault.

Lahm hired private investigators, who interviewed, among other people, neighbors who recalled seeing the alleged victim outside Lahm's house during the time she claimed to have been passed out.  The investigators also

2

interviewed a friend of Lahm, a medical doctor who said that he spoke to the alleged victim by phone about her injuries, and that she told him they had been caused by her having accidentally fallen onto a wood stove. Lahm claims that, once the prosecution received this and other "exculpatory information," which he provided to the court, it dropped the pending charge against him.

Lahm sued Farrington and the Town, alleging that Farrington had conducted a negligent investigation prior to his arrest, and that the Town was vicariously liable. The defendants moved for summary judgment on the basis, among other grounds, that Farrington "did not have a legal duty to investigate beyond establishing probable cause before arresting and bringing a criminal charge against [Lahm]." On August 23, 2012, the Superior Court (O'Neill, J.) granted the defendants' motion, noting that "no objection . . . ha[d] been filed."

On August 28, 2012, Lahm moved for reconsideration and objected to the motion for summary judgment. The trial court granted the motion for reconsideration, but, following a hearing, concluded that Farrington "did not owe [Lahm] a legal duty to investigate beyond establishing probable cause before arresting and charging [Lahm]." This appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. Dichiara v. Sanborn Regional School District, 165 N.H. ___, ___, 82 A.3d 225, 227 (2013). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

The sole issue that is properly before us is whether Farrington owed Lahm a duty to investigate, beyond establishing probable cause, before seeking to effectuate his arrest. Whether a duty exists in a particular case is a question of law, which we review de novo. Carignan v. N.H. Int'l Speedway, 151 N.H. 409, 412 (2004).

To recover for negligence, a plaintiff must demonstrate that the defendant owes a duty to the plaintiff, that he breached that duty, and that the breach proximately caused injury to the plaintiff. Pesaturo v. Kinne, 161 N.H. 550, 557 (2011). Absent a duty, a defendant cannot be liable for negligence. Carignan, 151 N.H. at 412; see, e.g., Macie v. Helms, 156 N.H. 222, 225 (2007) (affirming grant of summary judgment in favor of defendant on negligence claim because he did not owe plaintiff a duty to operate a tractor-trailer in a safe manner "under the circumstances of this case"); Dewyngaerdt v. Bean Ins. Agency, 151 N.H. 406, 409 (2004) (upholding trial court's dismissal of negligence claim because plaintiff "did not allege sufficient facts to demonstrate

3

that [defendant] had a duty to inform or to advise [plaintiff]" in manner alleged by plaintiff).

"When charged with determining whether a duty exists in a particular case, we necessarily encounter the broader, more fundamental question of whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." Pesaturo, 161 N.H. at 555. "In making this determination, we consider whether the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability." Id.

As Lahm acknowledges, we have never held that police officers owe criminal suspects a duty to investigate beyond establishing probable cause prior to arrest. We note that courts that have considered whether to recognize a common law tort of negligent investigation by law enforcement officers have held that no such tort exists. See, e.g., Waskey v. Municipality of Anchorage, 909 P.2d 342, 344 (Alaska 1996) ("The arresting officer owed [plaintiff] no duty of care to proceed without error when he initiated legal action against [plaintiff's brother, who misidentified plaintiff as the subject of arrest warrant]. Because the arresting officer owed [plaintiff] no duty of care, no duty was breached, and no negligence claim can be maintained."); Smith v. State, 324 N.W.2d 299, 300, 302 (Iowa 1982) (overruling trial court's denial of motion to dismiss and holding, as a matter of law, that there is no tort of negligent investigation of a crime by law enforcement officers); cf. Acosta v. Ames Department Stores, Inc., 386 F.3d 5, 12 (1st Cir. 2004) (affirming grant of summary judgment disposing of state law negligence claim where "the police acted reasonably in making their probable cause determination and had no duty to investigate further before arresting the appellant").

Lahm first argues that Smith, which he acknowledges "does support defendants' position," is "not completely helpful." He takes issue with the Iowa Supreme Court's reasoning, in which that court noted:

> The public has a vital stake in the active investigation and prosecution of crime. Police officers and other investigative agents must make quick and important decisions as to the course an investigation shall take. Their judgment will not always be right; but to assure continued vigorous police work, those charged with that duty should not be liable for mere negligence.

Smith, 324 N.W.2d at 301. In contrast to the Smith court's general assessment of police work, Lahm contends, "Farrington was not under pressure to make 'quick' decisions regarding his investigation" because the alleged victim "was away from Lahm, any crimes occurred days before, and

4

Farrington could easily have spent a day or two learning the facts that Lahm's investigators did after the arrest."

Even assuming, without deciding, that all of these contentions are true, the rationale articulated in Smith remains persuasive. As discussed more fully below, police officers' interest in conducting criminal investigations without fear of liability for negligence, which exists even in non-expedited cases, weighs heavily against the significant interests of criminal suspects.

Lahm next argues that several cases, and a provision in the Restatement (Second) of Torts, involving causes of action other than negligence, provide "indirect authority to support [his] claim against Farrington." In particular, he argues that these authorities demonstrate that "courts are willing to hold police officers to a negligence standard in appropriate circumstances, including a duty to conduct a reasonable inquiry before taking official action against a citizen." However, none of the authorities he cites establishes a duty of police officers to investigate, beyond establishing probable cause, prior to arrest. Rather, they merely articulate "appropriate circumstances" under which a criminal suspect may seek relief for injuries related to an arrest, through causes of action Lahm does not allege.

For instance, Lahm relies upon Williams v. City of Buffalo, 422 N.Y.S.2d 241 (App. Div. 1979), as an example of a court "impos[ing] on police officers a negligence-type duty of reasonable care and due diligence." Yet that case is inapposite, as it involves a specific claim and factual scenario not present here. The court in Williams upheld a jury verdict of false imprisonment based upon police officers' failure "to use reasonable care in investigating the case and ascertaining the proper defendant before executing the [arrest] warrant." Williams, 422 N.Y.S.2d at 243. In upholding the verdict, the Williams court relied upon its determination that a privilege typically afforded to an officer executing a valid arrest warrant, barring false arrest claims against the officer, does not apply where "there are two or more persons to whom the name on the warrant applies with complete accuracy." Id.; see also Johnson v. Kings County District Attorney's, 763 N.Y.S.2d 635, 642 (App. Div. 2003) (Williams limited to "misnomer" situations "requir[ing] police to investigate further in order to obtain probable cause to make an arrest" (emphasis added)). Here, Lahm has neither brought a claim of false imprisonment nor alleged facts involving a "misnomer" situation.

Lahm also argues that the Restatement's discussion of malicious prosecution is the "best articulation" of "indirect authority to support [his] claim against Farrington." He emphasizes a comment to a section relating to probable cause in connection with the tort of malicious prosecution, stating that an "accuser may properly be required to make inquiry as to the veracity of his informants when his belief is founded upon their information."

5

<u>Restatement (Second) of Torts</u> § 662 comment j at 429 (1977). We find unpersuasive Lahm's reliance on this comment because not only has he not asserted a malicious prosecution claim, but an element of malicious prosecution is the <u>absence</u> of probable cause. <u>Ojo v. Lorenzo</u>, 164 N.H. 717, 727 (2013). Here, Lahm is asserting that a police officer has a duty to conduct a reasonable investigation "<u>beyond</u> just finding probable cause." (Emphasis added.)

Accordingly, in determining whether to recognize a new duty of care owed by police officers, we must balance the social importance of protecting Lahm's claimed interest in requiring a "reasonable investigation beyond just finding probable cause" prior to arrest against "the importance of immunizing the defendant from extended liability." <u>Pesaturo</u>, 161 N.H. at 555.

Lahm focuses on the fact that he spent "the weekend in jail" for a crime, the charges for which the prosecution later dropped. He claims that, had Farrington conducted a "reasonable investigation," he "would not have been arrested, charged with second degree assault, held in jail for three days, and incurred related costs and other damages." Because Lahm's detention deprived him of his liberty, he arguably had a significant interest in a reasonable investigation beyond that which would establish probable cause. <u>Cf</u>. <u>State v. Poulicakos</u>, 131 N.H. 709, 713 (1989). Balanced against the social importance of Lahm's claimed interest is the considerable societal interest in immunizing police officers from "extended liability." <u>Pesaturo</u>, 161 N.H. at 555. Were we to extend the scope of a police officer's duty to investigate beyond establishing probable cause, prior to arrest, "liability would be unduly and indeed indefinitely extended" for police officers. <u>Macie</u>, 156 N.H. at 226 (quotation omitted). Such an extension of liability is at odds with the well-established doctrines of probable cause and official immunity.

For example, courts have long held that probable cause is the applicable metric to determine whether an arrest is lawful. <u>See</u>, <u>e.g.</u>, <u>Gerstein v. Pugh</u>, 420 U.S. 103, 113-14 (1975) (noting, under the Fourth Amendment to the Federal Constitution, that "[t]he standard for arrest is probable cause"); <u>State v. Lantagne</u>, 165 N.H. ___, ___, 83 A.3d 397, 401 (2013) (concluding, under Part I, Article 19 of the State Constitution, that officer "lacked probable cause to arrest the defendant" and, therefore, the arrest was unlawful). The United States Supreme Court has noted that the standard of probable cause to arrest, "like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime." <u>Gerstein</u>, 420 U.S. at 112.

These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for

6

enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

Id. (quotation omitted).

Thus, probable cause represents an accommodation between the "opposing interests" of police officers and criminal suspects, id., the same interests that we must balance here. Rather than require something beyond probable cause — the "reasonable investigation" Lahm demands — we have long held that probable cause is sufficient grounds for an arrest.

We reached a similar decision in a different context when we determined that municipal police officers are shielded from common law tort claims by official immunity. See Everitt v. Gen. Elec. Co., 156 N.H. 202, 219 (2007) (holding that "municipal police officers are immune from personal liability for decisions, acts or omissions that are: (1) made within the scope of their official duties while in the course of their employment; (2) discretionary, rather than ministerial; and (3) not made in a wanton or reckless manner"). We noted in Everitt that the doctrine of official immunity represents a "necessary compromise" between "competing policies": providing injured citizens with recourse, on the one hand, and preventing "[u]nbridled exposure to personal liability and hindsight review of [police officers'] decisions," on the other. Id. at 217, 218; see also Ojo, 164 N.H. at 722. While recognizing that "immunity can be fundamentally unfair to our citizens who are injured by erroneous police decisions," we observed:

The public safety entrusted to police officers demands that they remain diligent in their duties and independent in their judgments, without fear of personal liability when someone is injured and claims an officer's decision or conduct was to blame. The public simply cannot afford for those individuals charged with securing and preserving community safety to have their judgment shaded out of fear of subsequent lawsuits or to have their energies otherwise deflected by litigation, at times a lengthy and cumbersome process.

7

Everitt, 156 N.H. at 217-18.  Having considered these policy implications, we determined that "encouraging independent police judgment for the protection and welfare of the citizenry at large must prevail over ensuring common law civil recourse for individuals who may be injured by errant police decisions." Id. at 219.  Thus, in Everitt, we weighed the policy considerations both for shielding municipal police officers from liability and for allowing common law tort claims to proceed against them — essentially, the very policy issue before us today.  The duty of care Lahm now seeks to establish is in direct conflict with the reasoning of Everitt and the "necessary compromise" formulated in that decision.  Id. at 218.

We conclude that immunizing police officers from "extended liability" is an interest that outweighs Lahm's claimed interest in requiring a "reasonable investigation beyond just finding probable cause" prior to arrest.  Pesaturo, 161 N.H. at 555.  Therefore, we decline to recognize the duty Lahm seeks to impose. Because Farrington owed no duty to Lahm, he cannot be found liable for negligence on these facts.  See Carignan, 151 N.H. at 412.  Absent tortious conduct by Farrington, the Town cannot be vicariously liable for his conduct. See Porter v. City of Manchester, 155 N.H. 149, 152 (2007) (explaining basis for respondeat superior liability).

Finally, we conclude that Lahm failed to preserve for appellate review his argument that Farrington did not have probable cause to arrest him, as he did not raise this issue before the trial court.  See State v. Noucas, 165 N.H. 146, 152 (2013) ("We have consistently held that we will not consider issues raised on appeal that were not presented in the trial court." (quotation and brackets omitted)).  In addition, we deem the argument waived, as Lahm did not raise the argument in his notice of appeal.  See Granite State Mgmt. & Res. v. City of Concord, 165 N.H. 277, 294 (2013).

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.