NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2016-0528


ELAINE CHRISTEN & a.

v.

FIESTA SHOWS, INC. & a.

Argued:  May 11, 2017
Opinion Issued:  October 4, 2017


Abramson, Brown & Dugan, of Manchester (Jared R. Green on the brief and orally), for the plaintiff.


Desmarais Law Group, PLLC, of Manchester (Debra L. Mayotte on the brief and orally), for the defendant.


DALIANIS, C.J.  Plaintiff Elaine Christen, individually and as administrator of the estate of Sophia Christen, appeals the order of the Superior Court (Smukler, J.) granting summary judgment to defendant Fiesta Shows, Inc. (Fiesta), on the ground that Fiesta did not owe Sophia Christen a duty of care.  We affirm.

The trial court recited the following facts, set forth in the light most favorable to the plaintiff.  On May 3, 2013, 15-year-old Sophia attended a carnival operated by Fiesta in a fenced-in area of the Ocean State Job Lot

(Ocean State) parking lot located on the western side of Manchester Road in Derry. After Sophia and her friends shared cotton candy, they began searching for a bathroom to wash their sticky hands. The carnival had bottled water, napkins, and "port-a-potties" equipped with hand sanitizer dispensers, but it lacked public facilities with running water. The girls decided to leave the carnival and search for a bathroom.

Although there were two nearby restaurants located on the same side of Manchester Road as the carnival, the girls decided to cross Manchester Road to go to a Burger King. At the intersection of the Ocean State access road and Manchester Road, the girls found that the pedestrian crossing signal was inoperative, but they decided to cross the road without the walk signal. While crossing the road, Sophia was struck by a vehicle and suffered fatal injuries.

Approximately one week before the carnival, Fiesta had contacted the Derry Police Department to arrange for the presence of officers to provide "general public safety" at the carnival. Unlike organizers of other large events in Derry, Fiesta did not instruct the officers to engage in traffic control, pedestrian assistance, or other similar duties. One day after the accident, at the suggestion of the Derry Police Department, Fiesta arranged for additional police coverage to direct traffic and assist with pedestrian crossing on Manchester Road. Two days after the accident, two Fiesta employees reported to a Derry police officer investigating the signal that "they crossed the crosswalk regularly and had never seen the pedestrian crossing signal activate." (Quotation omitted.)

The plaintiff brought a wrongful death action against Fiesta, claiming negligence and also alleging that Fiesta's conduct was wanton and reckless, entitling her to enhanced compensatory damages.[1] Fiesta successfully moved for summary judgment, asserting that it violated no duty of care owed to Sophia. The plaintiff unsuccessfully sought reconsideration, and this appeal followed.

On appeal, the plaintiff argues that Fiesta "owed a common law duty of care to Sophia" because it was "foreseeable to Fiesta that customers with sticky fingers, including unsupervised teenagers, would seek running water, soap, and towels or a mounted blow dryer to effectively wash the stickiness off their fingers" and that Fiesta "should have expected that these customers . . . would leave the amusement area . . . to go to a fast food restaurant directly across from the entrance to the carnival site" to wash their hands. (Capitalization and bolding omitted.) The plaintiff also argues that, even if Fiesta was not subject to a common law duty of care, Fiesta voluntarily assumed such a duty by: (1) requiring in the company "Safety Manual" that its employees report all

---

[1] Although the plaintiff also sued the State of New Hampshire, that claim has been settled and the State is not a party to this appeal.

observed unsafe conditions; (2) hiring local police officers to provide "general public safety"; and (3) choosing to hold a carnival in Derry, "a town that expressly mandated a Public Gathering License for such events."

In reviewing a trial court's ruling on a motion for summary judgment, we consider the evidence in the light most favorable to the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Gray v. Leisure Life Indus., 165 N.H. 324, 327 (2013). "We affirm a trial court's decision if our review of the evidence discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Estate of Joshua T. v. State, 150 N.H. 405, 407 (2003). We review the trial court's application of the law to the facts de novo. Id.

To recover for negligence, a plaintiff must show that the defendant owes a duty to the plaintiff and that the defendant's breach of that duty caused the plaintiff's injuries. Manchenton v. Auto Leasing Corp., 135 N.H. 298, 304 (1992). Absent a duty, there is no negligence. Walls v. Oxford Management Co., 137 N.H. 653, 656 (1993). Whether a duty exists in a particular case is a question of law. Id.

"Ordinarily there is no duty to control the conduct of a third person to prevent the third person from causing harm to another person." 1 J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability & Litigation, § 3:12, at 3-31 to 3-32 (2d ed. 2003). "This rule is grounded in the fundamental unfairness of holding private citizens responsible for the unanticipated criminal acts of third parties." Walls, 137 N.H. at 657. "In certain limited circumstances, however, we have recognized that there are exceptions to the general rule where a duty to exercise reasonable care will arise." Remsburg v. Docusearch, 149 N.H. 148, 154 (2003). "We have held that such a duty may arise because: (1) a special relationship exists; (2) special circumstances exist; or (3) the duty has been voluntarily assumed." Id.

The plaintiff argues that "the trial court's analysis in support of its conclusion that Fiesta . . . did not owe a duty of care was flawed," contending that the court "placed too much emphasis" upon Chouinard v. New Hampshire Speedway, 829 F. Supp. 495 (D.N.H. 1993), and instead "should have relied upon" Kellner v. Lowney, 145 N.H. 195 (2000). According to the plaintiff, the federal district court's conclusion in Chouinard, that a defendant does not owe a duty of care to one injured by a third party on a public road if the defendant has no control over the road, was "implicitly rejected by this Court in its unanimous decision in Kellner." We disagree.

In Chouinard, the plaintiff went to the defendant's speedway to pick up race tickets. Chouinard, 829 F. Supp. at 497. The speedway, including its parking lot, was located entirely on one side of the adjacent highway. See id.

3

Not wanting to pay a parking fee or walk a long distance to the ticket booth from the parking lot, the plaintiff parked on the opposite side of the highway. See id. While crossing the highway, the plaintiff was struck by a motor vehicle. Id.

Applying New Hampshire law, the district court concluded that the defendant owed no duty to the plaintiff when a third party directly caused her injury on a public way that was not in the defendant's control. Id. at 498, 502. The court noted that other jurisdictions have reached the same conclusion and that "[t]he key factor to finding that a property owner owes no duty to an injured party is that the owner has no control over the property where the injury occurred or the instrumentality causing the injury." Id. at 500 (quotation and emphasis omitted); see Ferreira v. Strack, 636 A.2d 682, 686 (R.I. 1994) (explaining that the "great weight of authority" holds that there is no duty owed "by a landowner to one who is struck by a vehicle while crossing an adjacent public way"); Newell v. Montana West, Inc., 154 A.3d 819, 824 & n.9 (Pa. Super. Ct. 2017) (citing cases holding that there is no duty of care owed to a pedestrian who is injured when "seeking to cross the adjoining highway from or to the landowner's property, including pedestrians who were the landowner's business invitees").

Unlike in Chouinard, where the property was located entirely on one side of the adjacent highway, the defendant in Kellner owned a motel that consisted of a series of buildings divided by a public highway. Kellner, 145 N.H. at 196. Because of this layout, motel guests had to cross the highway to use all of the motel's facilities. Id. The plaintiff's son, who was staying with his family at the motel living quarters located on the south side of the highway, was struck by a vehicle when he darted into the highway after having attended religious services in the motel game room located on the north side of the highway. Id. at 196-97. We recognized that, given the special relationship between the innkeeper and a guest, the case fell within one of the limited exceptions to the general rule that there is no duty to control the conduct of a third person. Id. at 198.

On those facts, we concluded that the defendant owed a duty of care because the defendant could anticipate a risk of injury to guests who were required to cross the highway to return to their living quarters after attending religious services on motel property. Id. As we stated, "by choosing to operate her motel on both sides of [the highway] and by permitting religious services to be held on the opposite side of the highway from where her guests' living quarters were located, the defendant created an artificial and potentially hazardous condition on her property which gave rise to a duty of care." Id. at 199. In doing so, we distinguished Chouinard, noting "two important factual differences . . . : first, the special relationship of innkeeper-guest was not present in Chouinard; second, the public highway in that case was not bordered on both sides by the defendant's property." Id.

4

In this case, we agree with the trial court that the facts presented "are readily distinguishable from the 'unique facts' leading to the determination of a duty in <u>Kellner</u> and [are] more analogous to the determination of no duty in <u>Chouinard</u>." It is undisputed that the premises upon which Fiesta operated its carnival were located on only one side of Manchester Road. In addition, it is undisputed that the public way where Sophia's injury occurred was not in Fiesta's control and that Fiesta likewise did not control the vehicle that caused her injuries. Under those circumstances, Fiesta did not owe Sophia a duty of care as she attempted to cross Manchester Road.

Alternatively, the plaintiff argues that Fiesta voluntarily assumed a duty of care. The plaintiff first asserts that Fiesta voluntarily assumed a duty of care toward its customers because its so-called safety manual requires its employees to report "all unsafe acts and conditions as observed." Fiesta counters that "[t]he Safety Manual applies to the workplace, i.e. the carnival," and that the plaintiff's "interpretation of [the manual] that it applies anywhere in the world is not consistent with [its] plain language . . . and is an unreasonable interpretation."

The safety manual sets out the "general responsibilities" of Fiesta's employees. Its plain language limits its application to Fiesta's workplace. The "Company Safety Policy Statement" states that Fiesta "strive[s] to protect the safety of [its] employees and [its] goal is to provide an environment that is free from all recognized hazards," and that its "entire management team is firmly committed to providing a safe and healthful workplace for all employees and . . . will make every effort to comply with applicable safety and health laws, regulations and standards." We agree with the trial court that "[a] review of the Safety Manual reveals a clear implication that an employee's responsibility to report 'unsafe acts and conditions' is limited to those observed on the carnival premises."

Next, the plaintiff asserts that Fiesta "voluntarily assumed a duty of care when it chose to hire police details for 'general public safety.'" Fiesta counters that the "Derry Police Department was solely responsible for the assignment, placement and establishment of duties of [its] police officers regarding traffic and pedestrian control on Manchester Road, . . . which is a public way," and that "Fiesta had no responsibility for the motor vehicle and pedestrian traffic on public roads or highways and never agreed or assumed any duty with respect to the roadway."

The trial court rejected the plaintiff's assertion, finding that Fiesta "did not assume a duty merely by hiring Derry Police Department officers to provide 'general public safety' at the carnival." As the trial court correctly determined, "it is clear from the record that the officers did not conduct traffic and pedestrian control on Manchester Road until after Sophia's unfortunate death. Moreover, there is no evidence in the record that either Fiesta's employees or

its agents exercised any control over the road before Sophia's death." <u>Cf.</u> <u>Carignan v. N.H. Int'l Speedway</u>, 151 N.H. 409, 413 (2004) (holding that, although the defendant lacked control over the adjacent public road, because it undertook to direct traffic by placing an employee on its property to signal potential patrons from the public road onto its property, it "was required to exercise reasonable care to avoid exposing persons to risk of injury that occur[red] offsite").

Finally, the plaintiff contends that Fiesta voluntarily assumed a duty "to apply for a Public Gathering License so that town officials could consider the carnival's likely impact on the orderly and safe movement of traffic" and impose conditions to minimize hazards to pedestrian traffic. The plaintiff fails, however, to establish any nexus between Fiesta's alleged failure to apply to the town for a public gathering license and Fiesta's duty to protect Sophia against the dangerous road crossing. <u>Cf.</u> <u>Marquay v. Eno</u>, 139 N.H. 708, 714 (1995) (explaining that "[i]f no common law duty exists, the plaintiff cannot maintain a negligence action, even though the defendant has violated a statutory duty").

We hold that Fiesta did not owe Sophia a duty of care, or voluntarily assume such a duty. Accordingly, Fiesta is entitled to judgment as a matter of law and, therefore, we affirm the trial court's ruling granting Fiesta's motion for summary judgment.

<u>Affirmed</u>.

LYNN and BASSETT, JJ., concurred.