NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2017-0371

STEVEN GRADY

v.

JONES LANG LASALLE CONSTRUCTION COMPANY, INC. & a.

Argued: February 1, 2018
Opinion Issued: August 8, 2018

Burns, Bryant, Cox, Rockefeller & Durkin, P.A., of Dover (Matthew B. Cox on the brief and orally), for the plaintiff.

Primmer Piper Eggleston & Cramer PC, of Manchester (Gary M. Burt and Brendan D. O'Brien on the brief, and Mr. Burt orally), for the defendants.

LYNN, C.J. The plaintiff, Steven Grady, appeals an order of the Superior Court (Houran, J.) granting summary judgment to the defendants, Jones Lang LaSalle Construction Company, Inc. (Jones Lang), and Liberty Mutual Insurance Company and Liberty Mutual Group, Inc. (collectively, "Liberty Mutual"), in this tort action for damages on the ground that the defendants did not owe the plaintiff a duty of care to provide supervision, training, or safety equipment. We affirm.

I

The trial court set forth the following undisputed facts. In 2012, Liberty Mutual contracted with Jones Lang to complete a construction project on premises owned by Liberty Mutual in Dover (the general contract). In January 2013, Jones Lang subcontracted the roofing work for the project (the subcontract) to A&M Roofing and Sheet Metal Company, Inc. (A&M). The plaintiff was an A&M employee when A&M began working on the project.

On February 21, 2013, which was a cold and windy day, the plaintiff began to perform flashing and insulation work on the roof. Prior to installing the insulation, the plaintiff needed to clean dirt from the roofing membrane using a cleaning solvent. He also needed to use a torch to melt ice that was on the areas to be cleaned. The plaintiff testified that a worker must wear rubber gloves and fire-proof leather gloves to protect his hands from the cleaning solvent and the torch's flame. He further testified that a striker is used to light the torch.

A&M provided an on-site job box, from which the plaintiff obtained the following equipment and materials: flashing, cleaner, primer, seam tape, caulking, rags, and a propane torch. The plaintiff did not find rubber gloves, fire-proof leather gloves, strikers, or any fire extinguishers in the box. The plaintiff asked his A&M supervisor if there were any gloves available, but his supervisor said there were none at the site. The plaintiff did not see or talk to anyone from Jones Lang or Liberty Mutual.

Because of the cold weather, the plaintiff wore cotton gloves to keep his hands warm while he worked. After igniting the torch a few times with a lighter without incident, he lit the torch again as a gust of wind came, and the glove on his right hand ignited. As a result, the plaintiff was injured.

Sometime thereafter, the plaintiff received workers' compensation benefits from A&M for his injuries. In February 2016, he brought the present action for negligence against the defendants. In May 2017, the trial court granted summary judgment to the defendants, ruling that they did not owe a duty of care to the plaintiff. This appeal followed.

On appeal, the plaintiff argues that the trial court erred in granting summary judgment to the defendants. "In reviewing a trial court's ruling on a motion for summary judgment, we consider the evidence in the light most favorable to the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Christen v. Fiesta Shows, Inc., 170 N.H. 372, 374-75 (2017). "We review the trial court's application of the law to the facts de novo." Id.

The plaintiff first argues that the trial court erred in granting summary judgment to Jones Lang on the basis that it owed him no duty of care.

To recover for negligence, a plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff. Lahm v. Farrington, 166 N.H. 146, 149 (2014). "Absent a duty, there is no negligence." Christen, 170 N.H. at 375. "When charged with determining whether a duty exists in a particular case, we necessarily encounter the broader, more fundamental question of whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." Lahm, 166 N.H. at 150 (quotation omitted). "In making this determination, we consider whether the societal importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability." Id. (quotation omitted). "Whether a duty exists in a particular case is a question of law." Christen, 170 N.H. at 375.

"All persons have a duty to exercise reasonable care not to subject others to an unreasonable risk of harm." Remsburg v. Docusearch, 149 N.H. 148, 153 (2003). "[T]he existence of a duty does not arise solely from the relationship between the parties, but also from the need for protection against reasonably foreseeable harm." Hungerford v. Jones, 143 N.H. 208, 211 (1998) (quotation omitted). "Thus, in some cases, a party's actions give rise to a duty." Remsburg, 149 N.H. at 153. "Parties owe a duty to those third parties foreseeably endangered by their conduct with respect to those risks whose likelihood and magnitude make the conduct unreasonably dangerous." Id.

We begin by examining the relationship of the parties. Here, the plaintiff did not have a direct contractual relationship with Jones Lang. The plaintiff's employer, A&M, had a relationship with Jones Lang, and it was governed by the subcontract.[1] The subcontract required A&M to assume full responsibility for implementing and ensuring compliance with its safety and health programs on the project. The subcontract further required A&M to maintain all work areas in a safe manner and furnish all safety equipment. See also RSA 281-A:64 (Supp. 2017) (requiring employers to provide their employees with "safe employment," including "furnishing personal protective equipment, safety appliances and safeguards," ensuring that such equipment is "used regularly," and "adopting work methods and procedures which will protect the life, health,

---

[1] As the appealing party, the plaintiff has the burden to provide this court with a sufficient record to decide his issues on appeal. See Appeal of Roland, 170 N.H. 467, 469 (2017). The plaintiff did not provide a legible copy of the subcontract in the appellate record. Therefore, we rely upon the trial court's recitation of the relevant portions of the subcontract, which the plaintiff does not appear to dispute.

and safety of the employees"); Rounds v. Standex International, 131 N.H. 71, 76 (1988), abrogated on other grounds by RSA 281-A:8, I(b) (2010) ("The maintenance of a safe workplace, including suitable machinery and tools, is the duty of the employer."); Kennedy v. U.S. Const. Co., 545 F.2d 81, 84 (8th Cir. 1976) (reasoning that "ordinarily it is the obligation of a subcontractor to supply his own employees with tools and appliances, and a general contractor is not liable for the negligence of the subcontractor in furnishing unsafe tools or appliances").

On the day he was injured, the plaintiff got the equipment that he used from A&M, spoke only to an A&M supervisor, and did not see or talk to anyone from Jones Lang. While the plaintiff was using this equipment under the supervision of A&M, a gust of wind blew the flame from the propane torch onto the cotton glove he was wearing, igniting the glove. The plaintiff did not have a fire extinguisher with which to put out the flame.

Pursuant to RSA 281-A:64 and the subcontract, the plaintiff's employer, A&M, not Jones Lang, was responsible for providing the plaintiff with his equipment and ensuring his safety. Furthermore, on the day the plaintiff was injured, A&M, not Jones Lang, supervised him and provided him with the equipment that he used. Under these circumstances, we agree with the trial court that Jones Lang did not owe a duty of care to provide training, equipment, and oversight to the plaintiff. [2]

The plaintiff argues that this result is contrary to New Hampshire precedent, which establishes that a general contractor owes a duty of care to workers on the jobsite, including employees of subcontractors. The plaintiff relies upon our decision in Butler v. King, 99 N.H. 150 (1954), arguing that it demonstrates that, "under New Hampshire law, a general contractor does owe a duty of care to employees of its subcontractors." Jones Lang does not dispute that, as a general contractor, it had a duty to other workers, including subcontractor employees, "to maintain reasonable conditions of safety" on the premises by monitoring the premises to ensure that there were no dangerous conditions present on the site. Butler, 99 N.H. at 152. However, Jones Lang argues that Butler does not impose a duty upon general contractors to provide

---

[2] The plaintiff argues that his claim is broader than an allegation that he was supplied with improper tools. He argues that he also alleged that the defendants were negligent in their "supervision of the jobsite in general, the decision to proceed with rooftop work under the weather conditions existing on the morning in question, [and] the decision to proceed with rooftop work when the work surface was partially covered by snow and ice." However, we agree with the trial court that these responsibilities fell squarely on the subcontractor. The subcontract clearly placed these responsibilities upon A&M. Moreover, A&M, which was specifically hired to perform winter roofing work, was the party in the position to know about the particular dangers involved in its specialty work and to provide appropriate equipment and supervision to safely perform that work. Additionally, we agree with the trial court that the plaintiff's injuries resulted from the equipment that he used to melt the ice on the roof, not from the ice itself.

training, equipment, and oversight to subcontractor employees.  We agree with Jones Lang.

In Butler, a subcontractor employee was injured when a porch railing gave way.  Id. at 150-51 (preface to opinion).  The railing "looked like a normal railing and appeared to fit in tightly between the building and the iron column" and did not have "the appearance of involving an unreasonable risk to the user."  Id. at 152.  In ruling that "[t]he defendants had a duty to maintain reasonable conditions of safety," id., we reasoned that the defendants owed a duty to the plaintiff because, through their own acts, they created a non-obvious dangerous condition on the property, and it was "reasonably expectable that someone might lean against" the railing.  Id. at 152-53 (quotation and ellipsis omitted).  Thus, the defendants' duty in Butler arose from their creation of a dangerous condition on the premises, and nothing in Butler suggests that a general contractor has an additional duty to provide training, equipment, or oversight to subcontractor employees.

The plaintiff argues that "Butler does not state that the general contractor had installed the railing in question" and, therefore, the court found a duty based upon the defendants' supervisory role and not their construction activities.  We disagree.  The plaintiff in Butler was injured when a railing, which extended from the building to an iron column, gave way.  Id. at 150-51 (preface to opinion).  The defendants had "removed the wooden posts on the front of the porch, detached the railing at the easterly end and substituted iron lally columns."  Id. at 151 (preface to opinion).  Although it is not clear from these facts who originally installed the railing, it is clear that the defendants performed construction work on the railing prior to the plaintiff's injury.

The plaintiff further argues that "there was evidence that the general contractor never disturbed the portion of the railing that collapsed and caused the plaintiff's fall."  We disagree.  Butler states that "[t]he defendants' evidence indicated that there had been no disturbance of the railing at the westerly and building end and that it was blocked and braced at the lally column end."  Id. (preface to opinion).  The "lally column end" is where the defendants "detached the railing at the easterly end and substituted iron lally columns."  Id. (preface to opinion).  The plaintiff in Butler was injured when he put weight on a railing that "seemed to fit in there fairly tight between the iron column and the building."  Id. (preface to opinion) (quotation and ellipsis omitted).

It is clear from these facts that the defendants in Butler performed construction work on at least the easterly end of the railing that collapsed. Thus, contrary to the plaintiff's assertion, we found a duty based upon the defendants' creation of an unsafe condition on the premises through their construction activities, not from the defendants' supervisory role.  Accordingly, our determination that Jones Lang owed no duty of care to provide training,

5

equipment, and oversight to the plaintiff under the circumstances of this case does not conflict with Butler.

The plaintiff next argues that Jones Lang assumed a duty of care through promises that it made in the general contract with Liberty Mutual. "The existence of a contract between parties may constitute a relation sufficient to impose a duty to exercise reasonable care." Simpson v. Calivas, 139 N.H. 1, 4 (1994). However, "[w]hile a contract may supply the relationship, ordinarily the scope of the duty is limited to those in privity of contract with one another." Sisson v. Jankowski, 148 N.H. 503, 505 (2002). There are circumstances, though, in which the scope of a contractual duty may also extend to intended third-party beneficiaries of the contract. See Simpson, 139 N.H. at 4-5.

Here, the general contract was executed by Jones Lang and Liberty Mutual, and neither A&M nor its employees were parties to the general contract. Thus, for Jones Lang to owe a contractual duty to A&M and its employees, they must have been intended third-party beneficiaries of the general contract. "[A] third-party beneficiary relationship exists if the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promise as one of the motivating causes of his making the contract." Spherex, Inc. v. Alexander Grant & Co., 122 N.H. 898, 903 (1982) (quotation, brackets, and ellipsis omitted).

We agree with the trial court that "[n]othing in the general contract suggests that Jones Lang and Liberty Mutual entered into the general contract to benefit subcontractors as a third party." The general contract, under its "General Conditions," does require Jones Lang to assume the "entire responsibility and liability for all Work," "supervise and direct the Work," "be responsible for initiating, maintaining and supervising all safety precautions and programs," and be "fully responsible" for "the acts, errors, omissions, defaults and conduct of all Subcontractors." The general contract also states that Jones Lang is "responsible and shall indemnify and hold harmless [Liberty Mutual]" for any "loss or damage to the Work arising out of or caused by any negligent act or omission" of Jones Lang or its subcontractors. However, regarding "subcontractual relations," the general contract provides that Jones Lang "shall require each Subcontractor . . . to assume toward [Jones Lang] all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which [Jones Lang], by these Documents, assumes toward [Liberty Mutual]."

Viewed as a whole, these provisions make Jones Lang responsible solely to Liberty Mutual for supervising and completing the entire project, including any work that Jones Lang engages subcontractors to complete, and requires Jones Lang to indemnify Liberty Mutual against any problems that might arise. The general contract further indicates that Jones Lang assumed these duties

6

solely to benefit Liberty Mutual, and not for the benefit of any third party.  A provision in the "standard form of agreement" portion of the general contract states that Jones Lang "shall ensure that all subcontractors incorporate the specific terms of this Agreement and . . . assume towards [Jones Lang] all the duties and obligations stated in the General Conditions that [Jones Lang] has assumed towards [Liberty Mutual]."  Therefore, we conclude that neither A&M nor the plaintiff was an intended third-party beneficiary of the general contract between Jones Lang and Liberty Mutual.  See also Eastlick v. Lueder Const. Co., 741 N.W.2d 628, 637 (Neb. 2007) (stating that the duty of a general contractor to subcontractor employees "extends only to providing a reasonably safe place to work as distinguished from apparatus, tools, or machinery furnished by the subcontractor for the use of his own employees" and concluding that this duty was not enlarged by a contractual provision requiring the general contractor to "take all necessary precautions for the safety of employees working on the jobsite" (quotation omitted)).  But see Ryan v. TCI Architects/Engineers/Contractor, 72 N.E.3d 908, 913-16 (Ind. 2017) (concluding that a general contractor assumed a non-delegable duty of care for all workers on its site based upon the language of the general contract).  Accordingly, we conclude that Jones Lang did not assume a duty of care toward A&M or the plaintiff in the general contract.

The plaintiff next argues that Restatement (Second) of Torts § 324A (1965) "compels the conclusion that a general contractor owes a duty of care to employees of its subcontractors."  As an initial matter, we note that we have not previously adopted § 324A.  The parties, however, dispute only whether § 324A imposes a duty based upon the facts of this case, and not whether it should be incorporated into New Hampshire law.  Accordingly, for the purposes of this appeal, we will assume without deciding that § 324A is a valid statement of our law.

Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

7

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

We find that § 324A does not impose a duty upon Jones Lang under the facts of this case. As discussed above, the general contract required Jones Lang to assume supervisory and safety responsibility over the project. However, the general contract also required Jones Lang to require any subcontractor to assume the same responsibilities for the subcontracted work, and A&M in fact assumed those responsibilities in the subcontract. Moreover, A&M, as the subcontracted roofing company, was the party in the best position to know about the particular dangers involved in its specialty work and to provide appropriate equipment and supervision to safely perform that work. Thus, Jones Lang did not undertake to render services "necessary for the protection" of the plaintiff because both the general contract and the subcontract required A&M to directly supervise, equip, and ensure that its employees worked in a safe manner.

III

The plaintiff next argues that the trial court erred in determining that Liberty Mutual owed no duty to the plaintiff. The plaintiff contends that Liberty Mutual owed a duty because roofing work is an inherently dangerous construction activity.

"[C]onstruction projects, typically fraught with a variety of potential dangers that may arise if the work is not carefully done, do not, as a rule, fall within the inherently dangerous category." Arthur v. Holy Rosary Credit Union, 139 N.H. 463, 466 (1995). To be an inherently dangerous activity, construction "must be dangerous in and of itself and not dangerous simply because of the negligent performance of the work," and "the danger must be naturally apprehended by the parties when they contract." Id.

"Whether an activity is inherently dangerous is a question of fact to be determined by the trier of fact." Id. (quotation omitted). However, there is no issue for a trier of fact to decide if the inherent danger doctrine is inapplicable as a matter of law because the danger derived not from the nature of the work, but from the negligence of the contractor. See id.

The plaintiff argues that roofing work during a New Hampshire winter is inherently dangerous. However, the danger here derived from the plaintiff's use of improper equipment to melt ice, not from the roof or the ice. The plaintiff created a new risk, not inherent in the work itself, when he lit a torch with a lighter while wearing cotton gloves. Furthermore, the evidence in the record does not show that Liberty Mutual either knew or should have known that the plaintiff would perform the work in this potentially dangerous manner. Accordingly, the inherent danger doctrine is inapplicable as a matter of law.

8

The plaintiff alternatively argues, relying upon our decision in Valenti v. NET Properties Management, 142 N.H. 633 (1998), that Liberty Mutual owed a duty of care to persons on its business premises, which included the plaintiff. In Valenti, we adopted "a rule of vicarious liability, stating that one who holds his premises open to the public for business purposes is liable for the negligence of an independent contractor he hires to maintain the premises." Valenti, 142 N.H. at 635-36. Our intent in adopting the rule was to permit "owners and tenants of business premises to be sued by persons who enter public buildings expecting them to be safe." Id. at 636. We reasoned that "those who own or operate business premises are in the best position to protect against the risk of personal injury on their premises and can seek indemnification or contribution from their independent contractors." Id.

Considering the rule under the circumstances of this case, and in light of the purpose of the Workers' Compensation Law, RSA chapter 281-A (2010 & Supp. 2017), we find that it does not impose a duty upon Liberty Mutual.

The rule in Valenti is one of vicarious liability: it imposes liability on the premises owner not for his or her own actions, but for the actions of the independent contractor. Id. As discussed above, the plaintiff's employer, A&M, was responsible for providing the plaintiff with training, equipment, and oversight, and he received workers' compensation benefits from A&M for his injuries. Pursuant to RSA 281-A:8 (2010), the plaintiff waived all further rights of action against A&M. A&M, however, agreed to indemnify Liberty Mutual for any negligent acts or omissions of A&M.

Thus, under these circumstances, if the plaintiff is able to recover from Liberty Mutual, which is indemnified by A&M, he would effectively be receiving a double recovery from A&M based solely upon A&M's actions. In effect, this leads to the plaintiff recovering from the party immunized under the Workers' Compensation Law, thereby thwarting the exclusivity provision of RSA 281-A:8. Cf. Isabella v. Hallock, 10 N.E.3d 673, 675-76 (N.Y. 2014) (discussing cases in which the New York Court of Appeals concluded that, when New York's workers' compensation statute deprives an injured employee of a right to maintain an action against a negligent coemployee, it also "bars a derivative action which necessarily is dependent upon the same claim of negligence for which the exclusive remedy has been provided" (quotation omitted)). Because that result would undermine the exclusivity provision of RSA 281-A:8, we conclude that a premises owner's vicarious liability under Valenti does not extend to a subcontractor's employee who received workers' compensation benefits from the subcontractor for an injury caused by the subcontractor's acts or omissions. Accordingly, Liberty Mutual did not owe a duty to the plaintiff under these circumstances.

9

Affirmed.

BASSETT and HANTZ MARCONI, JJ., concurred.