NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2018-0425

EILEEN BLOOM

v.

CASELLA CONSTRUCTION, INC.

Argued: March 13, 2019
Opinion Issued: October 16, 2019

Shaughnessy Raiche, PLLC, of Bedford (Brian C. Shaughnessy on the brief and orally), for the plaintiff.

Morrison Mahoney LLP, of Manchester (Joseph G. Yannetti and Brian A. Suslak on the brief, and Mr. Suslak orally), for the defendant.

HANTZ MARCONI, J. In this tort action, the plaintiff, Eileen Bloom, appeals the order of the Superior Court (O'Neill, J.) granting summary judgment to the defendant, Casella Construction, Inc. (Casella), ruling that the defendant did not owe the plaintiff a duty of care and was not otherwise liable to the plaintiff pursuant to Section 324A of the Restatement (Second) of Torts. We affirm in part, reverse in part, and remand.

The record supports the following facts. On the morning of December 30, 2013, the plaintiff drove to Dartmouth-Hitchcock Medical Center (DHMC)

in Lebanon, where she worked as a nurse. She parked her vehicle in an employee parking lot, exited the vehicle, and took approximately two steps before she slipped and fell on ice. According to the plaintiff, there was "no sand [or] ice melt applied to the lot," despite that it had snowed "maybe" a couple of inches the night before and some of the snow had melted and refrozen overnight in the parking lot. As a result of her fall, the plaintiff suffered injuries that required surgery.

At the time of the plaintiff's accident, DHMC had a "Snow Plowing Agreement" with Casella (the contract) whereby Casella was to "provide certain services, including the equipment and labor for snow removal services" and agreed "to coordinate with [DHMC] to provide all services in accordance with" the "Snow Plowing Guidelines" (guidelines) attached to the contract. The guidelines stated that: "[s]alting and sanding will be done by DHMC unless assistance is asked and direction given by the DHMC Grounds Supervisor or his designee"; "[s]alt is applied . . . at the start of plowing operations as an anti-icing agent and during a storm to meet the objectives of this plan"; Casella "shall apply salt and/or sand only as directed by the DHMC Grounds Supervisor or his designee"; "[e]mployee lots shall be kept plowed as clear as possible and accessible at the start of each shift change"; and "[g]enerally salt is applied to parking lots prior to or at the start of a storm and after storm cleanup or as directed by DHMC Grounds Supervisor or his designee."

The plaintiff sued Casella, claiming that "[a]s an entity contractually obligated to provide winter maintenance to the parking lot in question, and in particular to treat accumulations of winter precipitation," Casella had a duty to "employ reasonable care to maintain the premises in a reasonably safe condition for those such as the plaintiff who used the premises for their intended purposes." She alleged that Casella breached its duty and "was negligent and careless in failing to maintain the premises in a reasonably safe condition." According to the plaintiff, "[n]o claim was made against Dartmouth Hitchcock, since her employer enjoyed statutory immunity for workplace injuries." See RSA 281-A:8 (2010).

Casella moved for summary judgment on the ground that it owed no duty of care to the plaintiff. Following a hearing, the trial court granted the defendant's motion. Subsequently, the court denied the plaintiff's motion for reconsideration, and this appeal followed.

On appeal, the plaintiff asserts that the trial court erred in granting summary judgment on the ground that the defendant owed her no duty of care. She argues that there are several reasons why a duty exists in this case: mutuality of interest between the plaintiff and DHMC; the rule set forth in Hungerford v. Jones, 143 N.H. 208 (1998); and public policy. She also argues

that Section 324A of the <u>Restatement (Second) of Torts</u> provides for liability in these circumstances.  We address these in turn.[1]

In reviewing a trial court's ruling on a motion for summary judgment, we consider the evidence, and inferences properly drawn from it, in the light most favorable to the nonmoving party.  <u>See</u> <u>Sabinson v. Trustees of Dartmouth College</u>, 160 N.H. 452, 455 (2010).  We affirm a trial court's decision if our review of the evidence discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>Christen v. Fiesta Shows, Inc.</u>, 170 N.H. 372, 375 (2017).  We review the trial court's application of the law to the facts <u>de</u> <u>novo</u>.  <u>Id</u>.

To recover for negligence, the plaintiff must demonstrate that the defendant owes a duty to her, that the defendant breached that duty, and that the breach proximately caused injury to her.  <u>See</u> <u>Lahm v. Farrington</u>, 166 N.H. 146, 149 (2014).  Absent a duty, there is no negligence.  <u>Christen</u>, 170 N.H. at 375.  Whether a duty exists in a particular case is a question of law.  <u>Id</u>.

The plaintiff first argues that "[t]here was sufficient mutuality of interests between [her] and her employer for the plaintiff to stand in the shoes of her employer and establish a relationship of privity warranting the imposition of a duty."  A duty generally arises out of a relationship between the parties.  <u>Sisson v. Jankowski</u>, 148 N.H. 503, 505 (2002).  While a contract may supply the relationship, ordinarily the scope of the duty is limited to those in privity of contract with one another.  <u>Id</u>.  Because there is no dispute that the plaintiff was not a party to the contract between DHMC and Casella, it follows that she is not in privity of contract with Casella.  Rather, the plaintiff asserts that, as an employee of DHMC, she and DHMC "have a mutual interest in avoiding workplace injuries" — her interest being "the avoidance of injury" and DHMC's "economic interest is avoidance of the costs of on-the-job injuries" — and that given this "mutuality of concern, . . . it is not fair to completely disown the concept of legal privity as between employer and employee."  Casella counters that "[a]bsent any evidence of intent to benefit third parties like [the plaintiff], her 'mutuality of interests' argument must fail as a matter of law, and any claims of implied privity were properly rejected by the Trial Court."

We agree with the defendant that the trial court properly rejected the plaintiff's "mutuality of interests" argument.  As the trial court reasoned, "nothing in the plain language of the Contract indicates that DHMC's intent was to protect its employees from workplace injuries," and, "even if that was DHMC's underlying intent, there is no indication that Casella was aware that a

---

[1] To the extent that, at oral argument, the plaintiff discussed other legal theories to establish that the defendant owed her a duty of care, we do not consider them because she has not briefed them.  <u>See</u> <u>State v. Mitchell</u>, 166 N.H. 288, 292 (2014) (declining to address argument made at oral argument that was not briefed).

benefit to third parties was contemplated by DHMC, which would be required to impose liability on Casella for injury to third party beneficiaries." See Spherex, Inc. v. Alexander Grant & Co., 122 N.H. 898, 903 (1982) (explaining that "a third-party beneficiary relationship exists if the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract," and noting that "a promisor owes [a duty] to an intended third-party beneficiary" (quotation, brackets, and ellipsis omitted)); Brooks v. Trustees of Dartmouth College, 161 N.H. 685, 697-98 (2011) (explaining that a "benefit to a third party is a 'motivating cause' of entering into a contract only where the promisee intends to give the beneficiary the benefit of the promised performance" (quotation omitted)).

The plaintiff argues, nonetheless, that a duty exists under the rule set forth in Hungerford. In Hungerford, we recognized that "parties owe a duty to those foreseeably endangered by their conduct with respect to those risks whose likelihood and magnitude make the conduct unreasonably dangerous." Hungerford, 143 N.H. at 211. Thus, we held that a therapist owes an accused parent a duty of care in the diagnosis and treatment of an adult patient for sexual abuse where the therapist or the patient, acting on the encouragement, recommendation, or instruction of the therapist, takes public action concerning the accusation. Id. at 215. The duty of care to the accused parent is breached when the publicized misdiagnosis results either from use of psychological techniques not generally accepted in the mental health community, or from lack of professional qualification. Id.

The plaintiff asserts that, "[a]pplying Hungerford to this case, it is clear that the relevant inquiry would be whether careless snow removal is unreasonably dangerous to the pedestrians who will later need to negotiate the surfaces and pathways which should have been safely treated." Casella counters that because its snow removal services did not constitute "unreasonably dangerous" conduct, Hungerford does not apply. The trial court rejected the plaintiff's assertion that the inquiry should focus on the risk of harm posed by the careless performance of an activity, and not the inherent danger in the activity itself. As the court noted, "by the plaintiff's definition, nearly any activity, if carelessly performed, could pose a foreseeable risk of harm to others" and that was not the intent of Hungerford. Although we agree with the defendant that its snowplowing services do not constitute unreasonably dangerous conduct, such is not the whole of the inquiry. Rather, the Hungerford analysis relied on a determination that the negligent activity posed a risk of outsized harm sufficient to create a duty. See Hungerford, 143 N.H. at 211. Given that there is no evidence in the record before us to support the existence of such a risk, we affirm the trial court's conclusion that Hungerford is inapplicable under the circumstances presented in this case.

4

Next, the plaintiff raises a policy argument citing "external elements" that she contends "support the finding of a relationship adequate to impose a duty." (Capitalization omitted.)  She asserts that "[i]n barring [her] action against the third-party contractor, the law would prevent the workers' compensation carrier . . . from replenishing itself, and place upward pressure on the carrier's rates," which "should be disfavored as a matter of policy."  She also argues that "Casella's appeal to DHMC's 'freedom to hire' is not [a] persuasive" reason to limit Casella's liability, because that reasoning "diminishes the natural deterrence imposed by the law of negligence and frees the blameworthy from the justice of compensation." (Capitalization omitted.)  In addition, the plaintiff argues that the defendant's position "subverts the New Hampshire statutory framework for 'Limited Liability for Winter Maintenance'" under RSA 508:22 (Supp. 2018). (Capitalization omitted.)  Like the trial court, we find these arguments unavailing and decline to address them in detail given the plaintiff's failure to provide any legal authority to support her position.

Finally, the plaintiff argues that "liability in this case is supported by the Second Restatement of Torts, Section 324A." (Capitalization omitted.)  We have referenced Section 324A of the Restatement (Second) of Torts in several cases and conclude that it is consistent with our analysis of whether liability exists in these circumstances.  See, e.g., Grady v. Jones Lang LaSalle Constr. Co., 171 N.H. 203, 211 (2018); Everitt v. Gen. Elec. Co., 159 N.H. 232, 237-38 (2009); VanDeMark v. McDonald's Corp., 153 N.H. 753, 757 (2006); Williams v. O'Brien, 140 N.H. 595, 599-600 (1995); Corson v. Liberty Mut. Ins. Co., 110 N.H. 210, 213-14 (1970).

Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A, at 142 (1965).  We agree with the trial court that subsections (a) and (c) do not apply in this case.  There is no evidence in the record that anything Casella did increased the risk of harm

5

presented by the existing weather conditions, and the plaintiff did not allege that her injury occurred because she or DHMC relied upon Casella's undertaking.

As to subsection (b), the trial court rejected the plaintiff's assertion that Casella owed her a duty, reasoning that

> [t]he evidence in the record establishes that Casella did not "completely subsume or supplant" DHMC's duty to keep its property free from unreasonable risks of harm. In fact, the Contract is clear that Casella was only responsible for clearing snow in certain designated areas and was only to apply sand and/or salt to the extent directed by DHMC, otherwise DHMC was solely responsible for sanding and/or salting the premises. Further, Casella was not expected to "spontaneously" respond to a winter weather event, nor was it expected to inspect the DHMC property between visits. Based on this evidence, it is clear that Casella did not completely assume DHMC's duty to the plaintiff, as contemplated by subsection (b).

(Record citation omitted.)

To the extent the trial court reasoned that there is no duty under subsection (b) because Casella did not assume DHMC's entire responsibility to keep its property free from unreasonable risks of harm, we disagree. Here, it is undisputed that Casella contracted with DHMC to render snowplowing services for specific areas of DHMC's property. In doing so, the defendant "under[took] to perform a duty owed by" DHMC to the plaintiff. Restatement (Second) of Torts § 324A(b); see Plank v. Union Elec. Co., 899 S.W.2d 129, 131 (Mo. Ct. App. 1995) (explaining that "the apparent rationale behind § 324A(b)" is that it "is reasonable to place liability upon a party who has clearly undertaken primary responsibility for services upon which third parties depend"); Canipe v. National Loss Control Service Corp., 736 F.2d 1055, 1062-63 (5th Cir. 1984) (stating that "[s]ubsection (b) comes into play as long as the party who owes the plaintiff a duty of care has delegated to the defendant any particular part of that duty").

Whether DHMC directed Casella to apply sand and salt to the parking lot where the plaintiff was injured raises a genuine issue of material fact which precludes the entry of summary judgment. The evidence in the record shows that Casella agreed to provide all services in accordance with the guidelines. According to those guidelines, "[s]alting and sanding will be done by DHMC unless assistance is asked and direction given by the DHMC Grounds Supervisor or his designee." The DHMC employee responsible for overseeing snow removal at the hospital stated in his deposition that, at the beginning of the winter plowing season, "the ground supervisor would work with the

6

contractor so that they understood what parts they were responsible for sanding and salting," and that during a snowstorm, the snowplow contractor would automatically sand and salt as part of that job.

Thus, although Casella asserts that under "the division of responsibilities between [it] and DHMC . . . Casella was responsible for snow removal and DHMC was responsible for sanding and salting," viewing the evidence in the light most favorable to the plaintiff, we conclude that an issue of material fact exists about the scope of Casella's undertaking for purposes of subsection (b). Accordingly, we reverse the entry of summary judgment to Casella and remand for further proceedings consistent with this decision.

<u>Affirmed in part; reversed in part; and remanded</u>.

HICKS and DONOVAN, JJ., concurred.